[Criminal No. 574.  Filed October 26, 1923.]

[219 Pac. 226.]

# DEMETRIO TERRASAS, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—BLOODY ARTICLES FOUND ON PREMISES OF PARTIES ACCUSED OF STEALING AND KILLING CALF HELD ADMISSIBLE.—In a prosecution for stealing a calf, a rope, shirt and other articles, with fresh blood on them, found in and about defendant's house, to which the parties who had killed the calf were tracked, *held* sufficiently identified with the crime to be admissible.

2. CRIMINAL LAW — INSTRUCTION AS TO EFFECT OF POSSESSION OF STOLEN GOODS HELD NOT ERRONEOUS, AS ASSUMING POSSESSION.— In a larceny prosecution, an instruction that unexplained possession of recently stolen goods is a circumstance from which accused's guilt may be inferred, *held* not erroneous, as assuming defendant's possession, especially in view of further instructions.

3. CRIMINAL LAW—POSSESSION OF STOLEN PROPERTY BY ONE PARTICIPANT IN THEFT IS POSSESSION OF OTHER.—Possession of stolen property by one participant in the theft is the possession of another, whether he stole, or aided or abetted the larceny; he being a principal in either case, under Penal Code of 1913, section 27.

4. CRIMINAL LAW — INCRIMINATING STATEMENT, ,NOT REPLIED TO BY ACCUSED, ADMISSIBLE TO SHOW ADMISSION BY SILENCE.—Evidence of silence, on being accused of crime, is relevant as tending to show guilt, if accused had full liberty to speak, and the incriminating statement is admissible, not as evidence of the truth thereof, but to show accused's admission by silence.

5. CRIMINAL LAW—INSTRUCTION AS TO EFFECT OF FAILURE TO REPLY TO INCRIMINATING STATEMENT HELD AUTHORIZED.—In a prosecution for stealing a calf, alleged to have been butchered by defendant and others, evidence of an officer's statement in defend-

---

1.  Admissibility against defendant of documents or articles taken from him, see notes in 59 L. R. A. 467; 8 L. R. A. (N. S.) 762; 34 L. R. A. (N. S.) 58; L. R. A. 1915B, 834; L. R. A 1916E, 715.

3.  Possession of recently stolen property as evidence of larceny, see note in 12 L. R. A. (N. S.) 199.

4.  Uncontradicted statement made in the presence of accused as confession, see notes in 4 Ann. Cas. 1042; 12 Ann. Cas. 875; 25 L. R. A. (N. S.) 543; 42 L. R. A. (N. S.) 890.

See 16 C. J., pp. 100, 618, 631, 661, 952.

ant's presence before his arrest, "Here is the man that put the hide in the ditch," *held* sufficient to authorize an instruction as to the incriminating effect of defendant's failure to reply.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Mr. William J. Fellows, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. Earl Anderson, Mr. A. R. Lynch and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

ROSS, J.—The appellant, Demetrio Terrasas, F. Murrieta, Refugio Fuentez and Francisco Terrasas were charged by information with the crime of grand larceny. The property alleged to have been stolen was a black and white Holstein heifer calf, the property of George Heinz. The appellant was given a separate trial. He was found guilty and sentenced to the penitentiary for not less than one nor more than three years. He appeals.

We adopt the Attorney General's statement of the case, which is as full and complete as is necessary to pass upon the assignments.

The evidence in this case shows that at about 2 o'clock on the morning of December 12, 1922, Mr. and Mrs. Heinz, the prosecuting witnesses, were awakened by someone driving a lame horse on the pavement near their house. The horse was drawing a light vehicle of some character, and was stopped near the Heinz home. After a time the horse and vehicle moved away in a westerly direction, along what is known as the Camelback road. About daylight, Mr. and Mrs. Heinz made an investigation, and found that a calf had been killed and drawn on their ranch at about the point where the horse and vehicle

were stopped. Upon further investigation, the Heinzes found that one of their calves was missing; the missing calf being a black and white Holstein heifer calf. Officers were called, and they found a trail of blood leading from the point where the calf was butchered to a house occupied by appellant and other Mexicans.

In a light buggy found at appellant's home, the officers found fresh blood and black and white hairs from a calf or other cow brute; also a lame horse, and in a canal about fifty steps from appellant's house the hide, head and feet of the Heinz calf were found. The hide, head and feet were weighted down with rocks in the bottom of the canal, with about a foot of water over them. In one corner of appellant's room, and behind a sack of grain, a bloody shirt and burlap sack were found; in an old stove about twelve or fourteen feet from appellant's house a bloody rope and cotton sack were concealed, and under an old tub near his house the officers found a piece of canvas with fresh blood thereon. In appellant's room they found a calf's liver and a bloody butcher-knife, and at his wood-pile they found a bloody ax and blood and small pieces of bone. A trail of blood led from the wood-pile to the bank of the canal, opposite where the hide was weighted. When appellant was arrested, about 10 or 11 o'clock in the morning after the calf was stolen, he was in bed, and a pair of trousers, wet to the knees, was hanging on the foot of his bed.

It is first claimed the court erred in admitting in evidence the cotton sack, the rope, the burlap sack, the shirt, the piece of canvas and the ax, found either on the premises or in the house occupied by appellant, and upon all of which was fresh blood. The objection made by appellant at the time these articles were offered in evidence was that they were

"irrelevant, immaterial, and incompetent as respects this defendant." These objections are of the most general character. The trial court could not tell therefrom what specific reason appellant had for objecting to the offer, and since the assignment is not argued in the brief we are likewise at a loss to know the reasons of his objection. It is plain the theory of the prosecution was that these bloody articles had been employed by those butchering the Heinz calf, and the circumstances all pointed in that direction. They might have been stronger evidence against defendant, if proof that they belonged to him, or had been seen in his possession, or that he then had absolute and exclusive control of them, had been available.

But the evidence was entirely circumstantial, and the best the prosecution was able to do was to show that these articles were either in appellant's separate possession or in a joint possession with the other defendants, by reason of their being found in the house that all of the defendants occupied, or on the premises immediately surrounding such house. Since these things were all found, with fresh blood on them, in and about the house where the party or parties who had killed the calf had been tracked, and since appellant was one of the inmates of such house and the probable owner of the wagon and horse used to convey the carcass away from the place where the calf was killed, we think they were sufficiently identified with the crime to be admissible as evidence, and that the court did not commit error in their admission. 16 C. J. 618, § 1223; 2 Wharton on Criminal Evidence, p. 1075; *Union* v. *State,* 7 Ga. App. 27, 66 S. E. 24. In *People* v. *Foo,* 112 Cal. 17, 44 Pac. 453, it was held that an objection to the admission of an article as an exhibit as incompetent, irrelevant and immaterial, and not connected with defendant, will

not raise the question on appeal of the sufficient identification of the exhibit. The objection in the present case is practically the same as in the Foo case. See, also, *Talley* v. *State,* 18 Ariz. 309, 159 Pac. 59; 16 C. J. 875, § 2198.

It is claimed by appellant that the following instruction is bad, in that in it the court assumed the fact of possession in defendant:

"You are charged that the possession of stolen goods by the accused recently after a larceny has been committed, if unexplained, is a circumstance from which you may infer the implication of the accused in the larceny. The value of such evidence, however, is to be determined by you alone. In determining the weight to be attached to such circumstances as evidence tending to prove guilt, you should take into consideration all the facts and circumstances connected with such possession, and their relation to the other proofs in the case."

"We do not give to the instruction that effect. The court was only stating a legal principle in the abstract. It was applicable to the evidence in the case, however." The quoted language was used by this court in *Taylor* v. *Territory,* 7 Ariz. 234, 64 Pac. 423, concerning an instruction of similar import to the one here. Other parts of the court's instructions leave no doubt that the court by this instruction did not intend to assume possession of the stolen calf in appellant, and we do not think the jury could have so understood the court.

This language of the instruction is also excepted to as misstating the law:

"Where two or more persons are jointly concerned in the commission of larceny, the possession of one person of the property alleged to have been stolen is deemed to be the possession of both."

The theory of the state was that appellant either stole the calf, or that he aided and abetted the lar-

ceny. In either case he would be a principal under the statute. Section 27, Pen. Code 1913. We cannot see why in law the possession of the stolen goods by either of the participants in the crime would not be the possession of the other.

It is also said the following instruction is not a correct statement of the law:

"You are instructed that, if a statement was made in the hearing and presence of the defendant, which affected his right and was criminating to him, and he did not reply to it nor make any explanation, but remained silent, such silence is in the nature of an admission of the truth of the facts contained in the statement made, provided the same was heard and understood by the defendant, provided further that he was not in custody, nor under restraint, but at liberty to reply or explain, and provided such statement was of such a nature and made under circumstances and by such a person as naturally to call for a reply."

This instruction was intended to cover this situation: The officer, who had tracked the vehicle from the Heinz ranch, by the blood spots in the road, to where appellant lived, had found the hide, head, and feet of the calf in a canal about 150 feet from the house, weighted down with rocks, in water about twelve inches deep. Blood spots from the house led to the place where these were placed in the canal. After making this discovery, the officer entered appellant's apartment and found appellant in bed. He testified:

"I walked to the back of the bed, and, arriving at the bed, I found a pair of blue pants hanging on the bed. They were wet up to about the knees, or possibly a little above, wringing wet; you could almost wring water out of them. I held the pants up like that [indicating] to some of the rest of the parties with me, and I said, 'Here is the man that put the hide in the ditch.'"

25 Ariz.—31

Later on the witness explained:

"'I said, 'Are these your pants?' prior to the time that I exhibited the pants. I didn't get any reply from the man, and I thought, 'Well, he can't talk English.'"

Witness states, however, that he soon learned the appellant spoke good English.

The above instruction was evidently written with a view of conforming to the suggestions of the Supreme Judicial Court in *Commonwealth* v. *McCabe*, 163 Mass. 98, 39 N. E. 777, wherein it was•said, in passing upon an instruction upon the effect of defendant's silence as an admission that an instruction worded like the above would be "strictly accurate."

It is well-settled law, we think, that:

"Where, on being accused of crime, with full liberty to speak, one remains silent, his failure to reply or to deny is relevant as tending to show his guilt; and the accusatory or incriminating statement is admissible, not as evidence of the truth of the facts stated, but to show accused's admission by silence." 16 C. J. 631, § 1256.

See, also, sections 1257, 1258 and 1259, Id. The same authority at page 1004, section 2423, states the law as supporting said instruction:

"It is proper to instruct the jury that they may take into consideration the fact that defendant remained silent when accused of the crime, as being in the nature of an admission, provided he heard the accusation, and provided it is left to the jury to say whether under the circumstances a denial of the accusation was demanded."

In this case, under the facts and circumstances as disclosed by the record, all the conditions prescribed by the law were present to make the appellant's silence a question for the jury. What was said by the witness must have been heard and under-

stood by defendant; he was not under arrest, nor in custody, but was at liberty to reply or explain if he so chose. The statement, ''Here is the man that put the hide in the ditch,'' surely was of such a nature and made under such circumstances that an innocent person would naturally have denied it, or made some explanation. While the instruction may not be free from doubt, we think, under the facts of this case, it was proper.

No error appearing the judgment of the lower court is affirmed.

McALISTER, C. J., and LYMAN, J., concur.