447 P.2d 541

The STATE of Arizona, Appellee,

v.

Abedon SAIZ, Appellant.

No. 1776.

Supreme Court of Arizona.

In Division.

Nov. 26, 1968.

**568**

Darrell F. Smith, Atty. Gen., by Terry Pierce, Asst. Atty. Gen., for appellee.

Murray Miller, Phoenix, for appellant.

BERNSTEIN, Justice.

On Monday, June 5, 1961 the Arizona State Treasurer's office was robbed of approximately $2,100. Shortly after the robbery, the State filed complaints against the appellant, Abedon Saiz, and two alleged accomplices. One of these accomplices, Vernon Mahan, was tried and convicted. The complaints against appellant and his other alleged accomplice, Anthony Delgado, were dismissed in August of 1961. The deputy county attorney told the trial judge that the complaint against appellant had been dismissed so that he could be prosecuted on federal charges then pending in Nevada. Appellant was apparently acquitted on the federal charges and returned to his home in Phoenix near the latter part of 1961.

The State waited until April 20, 1966 to refile a complaint against appellant. This second complaint was filed just prior to the expiration of the statutory period of limitations. A formal information was filed on June 22, 1966. The appellant was tried before a jury and convicted of robbery whereupon he filed an appeal with this court.

In his first assignment of error, appellant's counsel refers us to more than thirty different parts of the record where hearsay statements were admitted by the trial judge over his objection. The subject matter of these statements dealt with the inception, planning and execution of the robbery.

According to the record, the idea of plundering the State Treasurer's office originated in the mind of Tony Delgado during the early part of May, 1961. The idea was communicated to appellant in Las Vegas, Nevada on approximately May 18, 1961. The initial idea contemplated either burglary or robbery. After returning to Phoenix, Saiz and Delgado surveyed the State Treasurer's office. They abandoned their plan of burglary after observing that the steel gratings at the rear of the Treasurer's office building made escape with a safe impossible.

After agreeing that armed robbery was the most advantageous course to pursue, Saiz and Delgado invited Vernon Mahan to join with them in their criminal plan. Mahan was selected because the plan required a gunman and Mahan had a reputation as a robber "of good character."

The trio organized an elaborate robbery plan. It provided for Mahan, after the robbery, to escape in a stolen vehicle operated by appellant. The two were to proceed to a pre-arranged location where the stolen car would be abandoned and a second vehicle driven by Delgado used to complete the escape. An escape route was plotted which would provide the most rapid avenue of escape while insuring maximum cover from the anticipated police pursuit. The trio rehearsed the route of escape several times prior to the robbery.

On the morning of June 5, 1961 the trio purchased a pistol, dark sunglasses, gloves, and other instrumentalities which they planned to use in the robbery. They then stole a 1958 Ford Sedan to use as the first getaway car.

Mahan testified that after the robbery he escaped in the stolen sedan which was operated by appellant. The testimony revealed that the proceeds from the robbery were divided three ways. Subsequent to the robbery, appellant made some very damaging admissions in the presence of persons not connected with the crime.

■ These thirty objections may be classified into three principal categories for the purpose of analysis. The first category of statements include those made by the ap-

pellant himself *prior* to the robbery which evidenced his intention to participate in the crime. The rule permitting admissibility of these statements is found in McCormick on Evidence, § 270 at 572 (1954):

> "The modern cases and texts leave no room to doubt the statement that the accepted principle today is that evidence of declarations of a plan, design or intention presently entertained by the declarant is, subject to the usual limitations as to remoteness in time and apparent sincerity common to all declarations of mental state, admissible when offered as evidence that the design was carried out by acts or omissions of the declarant."

Appellant's invitation to Mahan to join in the crime and his repeated recommendations in planning it would make his statements admissible as evidence of his felonious intent. See Massey v. State, 19 So.2d 476 (Miss., 1944); People v. Henderson, 298 N.Y. 462, 84 N.E.2d 779 (1949); Opanowich v. Commonwealth, 196 Va. 342, 83 S. E.2d 432 (1954).

██ The second category of hearsay statements include those made by the appellant himself after the commission of the crime which tended to show his active participation in the robbery. These statements were made both in the presence of his accomplices and some individuals not connected with the crime. For example, appellant, upon learning from the newspapers that police were searching for him and Mr. Mahan as a prime suspect, said (with reference to Tony Delgado) "Well, that _____. He done turned me and you in." Admissions by a defendant are a well established exception to the hearsay rule. See State v. Thomas, 78 Ariz. 52, 275 P.2d 408 (1954).

██ The third category of hearsay statements include those made by the appellant's accomplices in his presence both before and after the robbery. These statements pertained to either the plan or execution of the robbery. The appellant both heard and understood the important role he would play. Rather than repudiate their statements the appellant concurred in the unlawful objective and often added his own ideas to the dialogue. We said in Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304 (1947):

> "It is the law that if a statement is made in the presence and hearing of another in regard to facts adversely affecting his rights, and he makes no reply, evidence of such statement and his non-denial thereof is admissible both for impeachment purposes (where he had thereafter testified to the contrary) and to show a tacit admission of the facts stated (where the truth of the facts embraced in the statement is within such other person's knowledge and the circumstances are such as naturally call for a reply if he did not intend to admit such facts)." 66 Ariz. at 134, 185 P.2d at 308.

It was held in Burns v. State, 226 Ala. 117, 145 So. 436 (1932) that the admission of an accomplice made in the defendant's presence and not denied by him is admissible against him as his own adoptive admission. See also Terrasas v. State, 25 Ariz. 476, 481, 219 P. 226 (1923); Torosian v. Paulos, 82 Ariz. 304, 313 P.2d 382 (1957); People v. Smith, 25 Ill.2d 219, 184 N.E.2d 841 (1962). We hold that these statements are admissible as exceptions to the hearsay rule

██ In the appellant's second assignment of error, he contends that the state, by delaying prosecution for almost five years, denied him of his right to a speedy trial. The appellant would have no speedy trial claim under our state constitution for we held in State v. Maldonado, 92 Ariz. 70, 373 P.2d 583, cert. denied, Maldonado v. Eyman, 371 U.S. 928, 83 S.Ct. 299, 9 L.Ed.2d 236 (1962) that the right to a speedy trial attached only after a suspect had been formally charged with a crime. Even then, the right would not apply unless the defendant could show that he had been prejudically harmed by the delay. The complaint filed and later dismissed against Saiz in 1961 would not be considered a formal charge.

In the recent case of Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), it was held that the Sixth Amendment right to a speedy trial was applicable to the states through the Fourteenth Amendment. It is appellant's contention that the federal constitutional protection should be interpreted to include those delays occurring between the commission of the offense and the filing of the information. While we do believe that the federal constitutional protection is broader in its scope than our state "speedy trial" protection as interpreted in Maldonado, it is not broad enough to include delays in initiating prosecution.

In the leading case of Parker v. United States, 252 F.2d 680, at 681, (6th Cir.) cert. denied, 356 U.S. 964, 78 S.Ct. 1003, 2 L. Ed.2d 1071 (1958), the Sixth Circuit, in discussing the scope of the Sixth Amendment protection, held that

"The provisions of the Sixth Amendment guaranteeing a speedy trial to anyone charged with an offense, contemplates a pending charge and not the mere possibility of a criminal charge."

This holding has met with the overwhelming approval of both State and Federal tribunals who have ruled on the same issue.[1]

A criminal defendant may find protection for unreasonable delay in prosecution under the procedural due process provisions of the Fifth and Fourteenth Amendments. The defendant must show that the state unreasonably delayed prosecution and that such delay prejudiced his defense.[2]

In the present case, appellant has failed to show that the delay was either unreasonable or prejudicial. On the contrary, the state had a corroboration problem until 1966. At that time, appellant's alleged accomplice, Vernon Mahan, agreed to testify on behalf of the state. He informed the County Attorney that Patrick Duceatt might be of assistance as a witness for the state. It was Duceatt's testimony which gave the necessary corroboration to convict appellant. This explanation gives the state sufficient justification for delaying prosecution almost five years. In addition, the appellant failed to show any prejudice to his defense by the delay. We hold

---

1. No less than five of the eleven circuits who have ruled on this issue have concurred in the Parker result. See e. g. Terlikowski v. United States, 379 F.2d 501, 506 (8th Cir. 1967); United States v. Panczko, 367 F.2d 737, 738–739 (7th Cir. 1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 716, 17 L.Ed.2d 546 (1967); Nickens v. United States, 116 U.S.App. D.C. 338, 323 F.2d 808, 810 (1963), cert. denied, 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1964); Harlow v. United States, 301 F.2d 361 (5th Cir.), cert. denied, 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56 (1962); Hoopengarner v. United States, 270 F.2d 465 (6th Cir. 1959). Among the leading State Courts who have refused to extend speedy trial protection to pre-prosecution delays, See People v. Jordan, 45 Cal.2d 697, 290 P.2d 484 (1955); State v. LeVien, 44 N.J. 323, 209 A.2d 97 (1965); People v. Katz, 46 Misc.2d 474, 260 N.Y.S.2d 567 (Sup.Ct.1965); Click v. Eckle, 174 Ohio St. 88, 186 N.E.2d 731 (1962). Several commentators and one leading federal judge have advocated extending sixth amendment protection to pre-prosecution delay. See Schneider, The Right to a Speedy Trial, 20 Stan.L.Rev. 476, 488–503 (1968); Note, Justice Overdue—Speedy Trial for the Potential Defendant, 5 Stan.L.Rev. 95 (1952); See Judge Skelly Wright's footnote in Mann v. United States, 113 U.S.App.D.C. 27, 304 F.2d 394, 396 n. 4, cert. denied 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962); See his concurring opinion in Nickens v. United States, 116 U.S.App. D.C. 338, 323 F.2d 808 (1963), cert. denied, 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1964).

2. The procedural due process defense first found expression 124 years ago in the English case of Queen v. Robins, 1 Cox Crim.Cas. 114 (Somerset Winter Assizes 1844). It has found clear support in several leading Federal cases. See Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965); Compare with Powell v. United States, 122 U.S.App. D.C. 229, 352 F.2d 705 (1965); Jackson v. United States, 122 U.S.App.D.C. 124, 351 F.2d 821 (1965).

that the delay in initiating prosecution did not violate the appellant's Fifth or Sixth Amendment rights under the Federal Constitution.

The appellant, in his third assignment of error, contends that there was insufficient corroboration to sustain a conviction. Our statute provides that a conviction can not be had on the testimony of an accomplice unless the accomplice's testimony is corroborated by other evidence. A.R.S. § 13–136; State v. Goldthorpe, 96 Ariz. 350, 395 P.2d 708 (1964). The state presented testimony by two witnesses who were not in any way connected with the crime. They testified concerning statements made by appellant both before and after the crime. Their testimony was admissible under the previously noted exceptions to the hearsay rule. Their testimony provides sufficient corroboration to sustain a conviction.

Judgment affirmed.

UDALL, V. C. J., and LOCKWOOD, J., concur.