264 So.2d 198

**Harold MAYBERRY, alias**

**v.**

**STATE.**

**6 Div. 246.**

Court of Criminal Appeals of Alabama.

Oct. 5, 1971.

On Remand April 11, 1972.

Rehearing Denied May 9, 1972.

Elliott & Laird, Jasper, for appellant.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

CATES, Judge.

Grand larceny: sentence ten years imprisonment.

Mayberry was originally indicted in August, 1968 (State's Exh. #2, R. 58). The trial of instant concern was on issue joined on an indictment filed March 2, 1970. Presumably the former indictment was ordered reconsidered by another grand jury. See Code 1940, T. 15, §§ 257 and 258.

The complaint before indictment was filed January 22, 1968.

On August 26, 1968, a writ of arrest issued on the first indictment. The sheriff made a return of arrest and commitment of the defendant to jail on September 19, 1969. The defendant testified that as early as February 10, 1968, a detainer was put on him at the Jefferson County jail by the Sheriff of Walker County.

This delay was the basis of a defense motion to dismiss for lack of speedy trial. This motion was filed April 7, 1970.

Mayberry testified that he was released from Kilby Prison on the same day the Sheriff of Walker County picked him up on the indictment. We do not know whether the Circuit Clerk had complied with Code 1940, T. 13, § 207. Mayberry at no time made a demand for a speedy trial until his motion to dismiss.

However, under Foster v. State, 45 Ala.App. 323, 229 So.2d 913, and Ex parte State ex rel. Attorney General, 255 Ala. 443, 52 So.2d 158, there can be no waiver of the right to a speedy trial by a penitentiary prisoner unless he has knowledge of the indictment.

This the State did not show and hence on a silent record and in the absence of testimony we can only assume that § 207 was not complied with. The indictment is the critical accusation because in felonies it is the only mode of accusation (except under Amendment 37 which permits informations on pleas of guilt *before* indictment). See *Foster*, supra.

This case presents an unexplained delay of thirteen months; one of the defend-

ant's alibi witnesses in the meanwhile went into the Atlanta Federal Penitentiary, another died.

We do not consider that we can on the instant record reverse the judgment below, nor in view of Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26; Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L. Ed.2d 607, and Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1, as well as *Foster*, supra, and Ex parte State, etc., supra, can we affirm.

Since the Sixth Amendment via the Fourteenth is involved (Klopfer v. North Carolina, *supra*), we feel that in the present case a further hearing should be had in the court below in reference to (but not necessarily limited to) : (1) when did the Walker County authorities first know actually or constructively that Mayberry was in the penitentiary; (2) when did Mayberry enter the penitentiary; (3) when, if ever, did the Circuit Clerk comply with Code 1940, T. 13, § 207; (4) if so, did the agents of the Board of Corrections serve the indictment on Mayberry and, if so, when; (5) did Mayberry make any demand for speedy trial other than contained in his motion filed after he had been reindicted, and (6) was the first indictment pleaded to or nol prossed by the State with consent of the court.

The foregoing enumeration is intended to be only by way of suggestion and the court below may enlarge the scope of the enquiry as to any matter bearing on the speedy trial issue, and whether or not Mayberry may have acquiesced in the delay. This procedure has been analogized from that established in Jackson v. State, 285 Ala. 564, 234 So.2d 579 [1]; the instructions given in the last paragraph of that opinion are appropriate here.

Accordingly, the cause is remanded for further proceedings in accordance herewith.

Remanded with directions.

## AFTER REMANDMENT HEARING IN THE CIRCUIT COURT

CATES, Judge.

At the hearing on remandment the parties stipulated to the following chronological table (Remandment R. 58):

"1. Robbery—1/19/68 [in Walker County]

    1a.  Warrant issued 1/22/68

2. Defendant jailed in Decatur Feb. 4, 1968

3. Defendant transferred to Birmingham, Ala. Feb. 10, 1968

4. Defendant pleads guilty in Jeff. Co. case April 3, 1968

5. Defendant caused to remain in Jeff. Co. Jail Feb. 10, 1968–June 20, 1968

6. Deft. actually reached prison June 20, 1968. [on Jeff. Co. conviction]

7. [Walker County] Grand Jury returned indictment Aug. 23, 1968

8. Deft. to be released from prison on 9/19/69

    8a.  Defendant arrested on Walker County chg. 9/19/69

9. Attorney appointed for Mayberry on or about Oct. 2, 1969.

10. Defendant arraigned on Oct. 2, 1969, plead not guilty, reserving right to file any motions or pleadings that might be deemed appropriate.

    10a.  Change of one attorney (see copy of order in case 3902)

11. Defendant files these motions on Oct. 6 & 7, 1969:

    1.  Motion to Produce

    2.   "    " Dismiss

    3.   "    " Suppress

    Defendant also filed demurrers

[1]. See also Commonwealth v. Clark, 439 Pa. 192, 266 A.2d 741, where a similar remand was ordered.

11a.   Special venire 12/15/69

Defendant filed additional demurrers on 12/24/69.

12.   Case set for trial—1/12/70

1.   Hearing on demurrer at which time demmurrer was sustained & Indictment ruled defective, dismissed without prejudice & D.A. ordered to re-submit to Grand Jury.

13.   March 2, 1970—new indictment returned.

14.   Trial on second indictment on April 12, 1970."   [Bracketed matter supplied.]

On August 25, 1969, the Board of Corrections had written the Sheriff of Walker County as follows:

"(SEAL)

STATE OF ALABAMA
BOARD OF CORRECTIONS

Montgomery, Alabama
August 25th, 1969

Mr. Howard Turner,
Sheriff Walker County,
Jasper, Alabama

Re: Harold Douglas Mayberry #96282
WM Jefferson County
Your Warrant 4479

Dear Sir:
   The above named man is scheduled to be released September 19th, 1969 from Kilby Prison, Montgomery, Ala.

Our records show hold for your office. Please have your agent on hand between 8:00 A.M. and 12:00 Noon to take him into custody.

Please advise whether or not you intend to exercise your detainer.

Yours truly,
(signed) M. S. Dean
M. S. Dean, Chief Clerk,
Records & Identification

MSD/j

CC Sheriff Jefferson County.
Warden Kilby Prison.
            (back of document)

Exec this 19 Sept. 69 committing him to jail.

            (Signed) Evans & Poore
Defendant fingerprinted this 19 day of Sept., 1969.

HOWARD TURNER, SHERIFF."
On direct examination Sheriff Turner testified as follows:

"Q.   I will ask you if sometime between the time of the robbery and September 19, 1969, did you learn that Mr. Mayberry was in Decatur, in jail in Decatur?

A.   Yes, sir, I learned he was in jail in Decatur, but I don't remember the date I learned this.

Q.   Well, do you think it was between those dates?   Was it between the time of the robbery and the time he was released from prison on September 19, 1968?

A.   I have no memory of it.

Q.   Sometime between the date of January 19, 1968 and the time he was released from prison did you learn he was in the Jefferson County Jail for a long period of time?

A.   Yes, sir, somewhere along in this period I learned he was in jail in Jefferson County.

Q.   Did you learn along in that time that he was in prison?

A.   Yes.

Q.   I will show you a letter and ask you to identify that.
Q.   This is from the State of Alabama Board of Corrections, Montgomery, Alabama.

*      *      *      *      *      *

Q.   All right.   Let me see the letter.   In the letter it did inquire whether or not you were going to exercise your hold, didn't it?

A.   Yes, sir.

Q. Mr. Turner, * * * —When you received this letter did this indicate you had called the Board of Corrections and given them the information that Walker County had a hold on Mr. Mayberry?

A. Evidently it did. We have no record on it. Now, where we make telephone calls to prisons that way we don't—we have no record of it. Where we send a warrant or a detainer or one of our regular warrants we have a record of that. This must have been by telephone conversation or either was placed by Birmingham, Jefferson County.

Q. Let me ask you this: In order for you to get a letter such as this do you feel that the Board of Corrections would have had to be notified by your office or some other office that had a hold originating from your office?

A. Yes, sir."

Without objection Mayberry's attorney introduced the following document in evidence:

"Case: 4220 State v. Mayberry

STATE OF ALABAMA
BOARD OF CORRECTIONS    FILED

Oct 21 1971
Pat Fleming,
Circuit Clerk,
Walker County
Alabama

TO WHOM IT MAY CONCERN:

This is to certify that our records do not show that we have ever received a Grand Jury Indictment for Robbery from Walker County on Harold Douglas Mayberry.

Our records also do not show that any indictment was ever served on the subject.

This the 19th day of October, 1971.

(SEAL)        (Signed) Milford S. Dean
Milford S. Dean
Correctional Records Officer

Sworn to and subscribed before me this 19th day of October, 1971.

(signed) Wallace L. Battle
Notary Public
(SEAL)"

The original indictment was filed August 23, 1968. On August 26, 1968, the Circuit Clerk issued a writ of arrest "To Any Sheriff of the State of Alabama." Code of 1940, T. 15, § 170. The Sheriff did not fill in the space to show when it was received in his office. He showed only execution thereof on September 19, 1969.

We think it is reasonable to assume that the Circuit Clerk gave the writ of arrest to the Sheriff within a few days after August 26, 1968. The Sheriff had known of Mayberry's being in Decatur and Birmingham between February 4, 1968, and June 20, 1968.

Sometime thereafter he can also be assumed to have communicated with the Board of Corrections, directly or indirectly, as evidenced by the Board's reference to a "hold" against Mayberry. It is clear, however, that he did not advise the Circuit Clerk of Mayberry's being in the penitentiary. Thus the clerk on the remandment hearing stated that even though he was ignorant of Code 1940, T. 13, § 207, nevertheless he had no information under which he could have put it into operation.

■ Since the constitutional demand of a speedy trial rises above the convenience of how a sheriff should keep his official records and papers we must assume, in view of the State's silence on this record, that the Sheriff knew of Mayberry's being in prison on or about June 20, 1968.

He had sent "detainers" to both Decatur and Birmingham and then to the State Board of Corrections. The writ of arrest on indictment was in his hands from about August 26, 1968. The writ ran to any sheriff hence it could have been mailed (or taken) to Birmingham. The fact that it was not lends further credence to the con-

tention that the Sheriff already knew Mayberry was in Kilby Prison. In this connection we advert to Code 1940, T. 15, § 251, which reads:

"In all criminal cases in the circuit court, in which a capias or warrant of arrest has issued for two terms, and has been returned 'not found,' the solicitor may, by leave of the court, withdraw and file the indictment, with leave to reinstate the same when the ends of justice require such reinstatement."

In addition to the above quoted testimony the conclusion of the Sheriff's evidence appears as follows:

"COURT: To your knowledge is the letter you testified about previously—previous to this letter is that the first actual or constructive notice that you had as Sheriff that Mr. Mayberry, the defendant, was in the state penitentiary?

"WITNESS: Judge, I am not sure. I just can't remember. The word gets around. We talk with officers in Jefferson County about different people and they might have made a remark or something that Spider had gone down. I don't know how I first learned or anything about the date I learned it.

"COURT: Was that the first written correspondence to your knowledge that you had that he was in the penitentiary?

"WITNESS: Yes, sir.

"COURT: Though you may have known it by word or mouth from some other source?

"WITNESS: Yes, sir.

Q. Mr. Turner, didn't you tell us a while ago it would be your best opinion for the Board of Corrections to write you and inquire about your hold that they would have had to have some notice of some hold originating from Walker County?

A. Yes, sir.

Q. Is it a possibility or in your best judgment do you know whether or not you ever contacted Decatur when he was there and placed a hold against him up there?

A. I don't recall it. It is possible I might have. I don't know.

Q. Is it also possible you could have called Birmingham and informed them of a hold for Walker County?

A. Yes, sir.

"CROSS EXAMINATION BY MR. COLVIN [District Atty.]

Q. Sheriff, do you have any independent recollection as to the manner in which your office placed a hold for Mr. Mayberry in Jefferson County?

A. Well, the only record I have is by sending a copy of the grand jury indictment. This was mailed on 3–19–70, but I don't . . .

Q. Does your record reflect anything having been mailed back between the date of the robbery of January 19, 1968 and his release from prison on September 19, 1969? Does your records reflect any notations made on the mailing of the indictment or warrant?

A. No, sir, we have no record of it. It is possible I might could have called by telephone and placed a hold, but we don't have any written record. We didn't send a warrant.

Q. In the normal course of your business in placing a hold on people you sometime do it by telephone?

A. Yes, sir, telephone.

Q. In this case you don't know whether— Do you know whether or not you ever placed a hold at the penitentiary or whether the hold they referred to in this letter was sent from Jefferson County when Mr. Mayberry went to Kilby?

A. No, sir, I have no record actually of us placing a hold on him at Kilby Prison. That goes back to what I said a while ago. It is possible we could have called and placed a hold on him.

Q. Now, if you had done that, of course, that would indicate you knew he was in Kilby?

A. Yes, sir.

Q. You are not saying that's what happened because I believe you testified a while ago that you don't recall when you learned he was in prison?

A. No, sir, I don't recall.

Q. Do you recall whether you actually knew he was in prison prior to getting this letter dated August, 1969?

A. No, sir, I am not sure that I knew he was in prison.

Q. You did bring him to Walker County for trial at the first opportunity you had to get physical possession of Mr. Mayberry, didn't you, sheriff?

A. As far as I recall and know we did.

Q. You never had any release of him to you by Jefferson County authorities prior to that time?

A. Not that I remember, no, sir.

Q. As far as you know the only time he was brought back to Walker County after the date of the robbery was when you were informed by the prison authorities that he was ready to be released to you on September 19, 1969?

A. Yes, sir.

MR. COLVIN: I believe that's all.

"REDIRECT EXAMINATION BY MR. LAIRD [Defense Counsel]

Q. Mr. Turner, let me ask you one more question. You did testify that you do in some instances make telephone calls and tell different places say Jefferson County or Decatur or prison about different holds on defendants . . .

A. Yes, sir.

Q. . . . . or persons you suspected of committing crimes?

A. Yes, sir.

Q. Did you testify a while ago that there is a possibility you did that in this case?

A. Yes, sir, I would say there is a possibility that I did do it and there is a possibility that I could not have. I might have called Birmingham and Birmingham might have placed a hold on him.

Q. Do you feel that the presence of the letter coming to you indicated that you did in this case?

A. Yes, sir, in my best judgment it represents that we had placed a hold on him.

MR. LAIRD: That's all.

"RECROSS EXAMINATION BY MR. COLVIN

Q. Your record doesn't indicate that you had placed a hold on him to which this letter is a response or whether or not that hold or thing they refer to as a hold represents a telephone call on your part or that they had received a copy of an indictment from you?

A. No, sir, it does not.

Q. You have no independent recollection or knowledge as to whether or not an indictment or a copy of the indictment was sent to Kilby?

A. No, sir, I don't.

MR. COLVIN: That's all."

[Bracketed matter supplied.]

Our Legislature has not implemented § 6 of Const.1901 which gives the accused the right, inter alia, to a speedy trial. The Constitution also, § 144, provides that a circuit court (or equivalent) "shall be held in each county in the state at least twice in every year, * * *." A provision like unto this latter one has been in every constitution since Alabama became a state.

Felony accusations (except for Amendment 37 informations) must be made by indictments handed down by a grand jury, Const.1901, § 8. While it is an independent body in its deliberations, still the grand jury is a constituent part of the circuit court. Thus a session of a grand jury not less often than twice a year is contemplated by § 144, supra.

Hence, it would seem that the Constitution since 1819 has contemplated that between arrest on an indictment and trial there ordinarily should not be more than six to nine months.[2]

■ Where the accused is in the penitentiary of this State he is not considered a fugitive from another indictment; nor is his failure to demand a speedy trial a waiver unless (and until) "he has knowledge of the indictment and is called upon directly or indirectly to make an election * * *." Ex parte State, ex rel. Attorney General, 255 Ala. 443, 52 So.2d 158.

After Mayberry was brought to Walker County by the Sheriff in September, 1969, his counsel filed demurrers to the indictment which on January 12, 1970, were sustained. The indictment was dismissed without prejudice. A new indictment was returned March 2, 1970. The motion to dismiss for lack of a speedy trial was filed April 7, 1970. Trial was begun April 12, 1970.

■ On October 7, 1969, a Motion to dismiss for lack of speedy trial was filed against the original indictment. However, this motion was not ruled on by the trial judge. (R. on Remandment 46). In the absence of a ruling, the motion must be deemed to have been abandoned in the court below. Bundrick v. State, 263 Ala. 245, 82 So.2d 309.

The second motion to dismiss the second indictment sought to run the time of the State's delay back to August, 1968.

■ However, we think the chain of delay was broken when the defendant abandoned the original motion to dismiss in favor of speculating as to whether or not the subsequent grand jury would reindict him. Thus, when the first indictment was dismissed the defendant stood before the circuit judge as a committing magistrate within the statutory scope of his powers to order a new indictment to be preferred under Code 1940, T. 15, § 258. Such an order involves the question of bail vel non and if the offense is held to be bailable, the fixing of the amount thereof. We are not confronted with the hypothetical problem which might be posed had the subsequent grand jury no-billed the proposed second indictment.

■ We agree that usually the right to a speedy trial begins (and ends with the indictment). See State v. Saiz, 103 Ariz. 567, 447 P.2d 541, refusing to apply Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 to a delay of five years before filing a formal felony information. An earlier complaint was not a formal charge. But see United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468.

In People v. Williams, 71 Cal.2d 614, 79 Cal.Rptr. 65, 456 P.2d 633, an earlier appeal led to a reversal. At the second trial Williams moved successfully for a dismissal because of noncompliance with a 60 statutory trial time. A new information was then brought. Williams's motion to set this charge aside was denied by the trial court. The Supreme Court did not write to this point other than to describe the factual sequence.

Latson v. State, 51 Del. 377, 146 A.2d 597, concerned a defendant whose motions to dismiss (i. e., demurrers) were granted against two successive indictments. The instant appeal was taken from a conviction on the third indictment. The opinion in

2. The Common Law court year was divided into four terms: Michaelmas, Hilary, Easter and Trinity with a vacation usually running from July into October. 1830, 11 Geo. 4 & 1 Will. 4, c. 70.

the antepenultimate and penultimate paragraphs concludes:

"The long delay in bringing the defendant to trial was the direct result of the defendant's own actions. This is not said by way of criticism. Every defendant is entitled to insist upon every safeguard that the law throws around the conduct of a criminal cause. But if he elects to file motions raising preliminary legal questions he canot reasonably say that the prosecution is delaying his trial. A motion to dismiss is not a demand for a speedy trial. Pietch v. United States, 10 Cir., 110 F.2d 817, 129 A.L.R. 563.

"We are of opinion that the defendant's right to a speedy trial was not violated."

Under a statute against delay in bringing a defendant to trial, the court in State v. Davidson, 78 Idaho 553, 309 P.2d 211, said:

"The trial court treated the amended information as a new information, as though the original information had been dismissed or had never existed, and the court required appellant's arraignment and plea anew. The information as such, though denominated an amended information, was filed during the second term and appellant's trial was had during the third or next following term. In the case of Schrom v. Cramer, 76 Idaho 1, 5, 275 P.2d 979, 981, this Court stated:

" 'All the authorities which have been called to our attention hold that the phrase "the next term of the court", as used in the statute, excludes the term of court then current and means the next ensuing term. * * * Likewise, the information or indictment having been filed during a current term of court, the defendant must be tried during the following term of court unless good cause to the contrary be shown.'

"The situation here is identical in principle as was involved in the case of Schrom v. Cramer, supra; for therein, the accused was held to answer during one term of the trial court, the information was filed during the next term and the court held that the accused should be tried during the third term, absent good cause to the contrary." * * *

See also State v. Goodmiller, 86 Idaho 233, 386 P.2d 365.

The defendant successfully challenged the composition of the grand jury which had indicted him in Montgomery v. State, 4 Md.App. 473, 243 A.2d 620. Later he raised the claim of lack of a speedy trial. We quote in part:

"Under no circumstances in the instant case would it be proper to compute the time in considering delay from the time of their initial prosecution for they were then tried and convicted without complaint as to delay." * * *

The Supreme Court of New Mexico in State v. Rhodes, 77 N.M. 536, 425 P.2d 47, stated in part:

" * * * It is not contended that prosecution for the offense charged under count seven was barred by the Statute of Limitations. He was informed against during April 1965, and was tried on June 2, 1965. It is not argued that this lapse of time violated his right to a speedy public trial as guaranteed by article 2 § 14 of the Constitution of New Mexico, or that he was not tried at the first term of court after the filling [sic] of the information. His position is that since he was originally informed against under an identical count in an information filed about May 3, 1962, which count was dismissed by the district attorney on about August 29, 1962, that he was not accorded his statutory right to be tried at the next term of court, as provided by § 41-11-4, N.M.S.A.1953, and was not accorded his constitutional right to a speedy public trial. The fallacy in this argument is apparent. The 1962 charge was dismissed, and thus there was no charge against him upon which he could

have been tried at the next term of court, or upon which his constitutional right to a speedy public trial could have operated."

In Ferguson v. Commonwealth, Ky., 401 S.W.2d 225, we find the following—including an illuminating chronology:

"It is argued appellant was denied a speedy trial. In this connection it should be pointed out that appellant was first convicted on March 12, 1964. On appellant's motion under RCr 11.42, this conviction was set aside on June 7, 1964. He was reindicted June 9, 1964, and tried on November 4, 1964. The criminal terms of the Butler Circuit Court are held in March, June, and November. Under these circumstances we find there is no merit in appellant's contention that he was denied a speedy trial."

See also Mealy v. Commonwealth, 193 Va. 216, 68 S.E.2d 507.

While we in Alabama do not have a statute to implement the speedy trial provision of our Constitution, yet the reasoning employed fits the instant situation.

*First*, of all the requirement for speedy trial does not operate in a vacuum: there must be an indictment to be speedily tried. *Second*, measuring the time from the second true bill until trial shows a clearly reasonable delay. *Third*, the quashal of the first indictment and the consequent reindictment came about from the defendant's pleading and not for the convenience of the State as happened in State v. Kreps, 8 Ala. 951, and in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1. *Fourth*, finally the running of the pertinent statute of limitations in many crimes works against accusatorial delay by the State. Where the Legislature has deemed the crime so heinous as not to be forgotten by the mere passage of time, the need to avoid the loss of witnesses and the pressure of injured parties and their kin ordinarily spurs the public prosecutor. See United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

In this latter case the Supreme Court after referring to *Klopfer*, supra, and Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, remarked:

"Invocation of the speedy-trial provision thus need not await indictment, information or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case." (Footnotes omitted).

Inasmuch as Mayberry was not arrested for the instant robbery until after indictment, the speedy trial time would be measured from the time when the Sheriff could reasonably have caused Mayberry to be served with the writ of arrest on the indictment, Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26. This period as we have explained was abrogated by Mayberry's election to have the first indictment dismissed.

We need not go into what is the minimum time in such cases that the State can neglect to try a penitentiary inmate.

Under Code 1940, T. 15, § 389 we have reviewed the entire record and consider the judgment below is due to be

Affirmed.

PRICE, P. J., and ALMON and TYSON, JJ., concur.