Buying, receiving or concealing stolen property; sentence: ten years' imprisonment.
The only issue appellant presents for review is whether the delay of two years and nine months between his arrest and trial was a denial of his constitutional right to a speedy trial. U.S. Const., amend. VI; 1901 Ala. Const., art. I, § 6. The facts governing this issue are set forth in chronological order as follows:
August 2, 1978 — Appellant and two codefendants were discovered in possession of a Chevrolet pickup truck hauling a flatbed farm trailer to which a tractor was tied.
August 4, 1978 — Appellant was arrested and charged with buying, receiving or concealing stolen property, to wit, the Chevrolet pickup truck. Appellant was also charged with other offenses arising from the same incident.
August 8, 1978 — Defendant posted bond.
August 21, 1978 — Defendant failed to appear at the preliminary hearing because he was incarcerated in Georgia.
September 18, 1978 — Defendant's preliminary hearing was held and his case was bound over to the grand jury.
September 26, 1978 — Defendant was tried and convicted of theft in Georgia. He was sentenced to six years' imprisonment.
October 4, 1978 — Defendant entered the Georgia prison system.
October 4, 1978-May 1979 — The Randolph County deputy district attorney was associated with defendant's attorney, Doc Davis, on several Georgia civil cases. Davis related to the deputy district attorney that the defendant was dying of cancer.
February 6, 1979 — The Randolph County grand jury returned indictment charging the defendant with buying, receiving or concealing the Chevrolet pickup truck. This was the first grand jury term since the defendant's preliminary hearing. At this time defendant was incarcerated in Reidsville State Prison in Georgia. *Page 960 
February 13, 1979 — The Randolph County circuit judge's bench notes reflect that arraignment was continued because the defendant was incarcerated in Georgia.
April 1979 — One of the codefendants pleaded guilty in Randolph County and received a probationary sentence to run concurrently with a Georgia prison term.
May 1979 — Defendant employed Georgia attorney, Frank H. Hester, replacing Doc Davis.
May 16, 1979 — Defendant was released from Georgia prison system on appeal bond in the Georgia theft case.
May 16, 1979-February 6, 1980 — Defendant was free on the appeal bond. For two months during this time, defendant lived in Randolph County three-fourths of a mile from two deputy sheriffs whom he saw periodically. Defendant was in and out of Randolph County for the remainder of this interval.
February 6, 1980 — Defendant was arrested by Heard County, Georgia, authorities pursuant to charges in Randolph County, Alabama. Defendant claims this was the first knowledge he had of pending Alabama charges.
February 22, 1980 — Defendant's arraignment was continued awaiting his extradition from Georgia.
March 21, 1980 — The Randolph County deputy district attorney mailed extradition papers to the Alabama governor's office since he had discovered that defendant was imprisoned in Franklin, Georgia. The extradition request stated that the defendant had charges pending against him in Randolph County of buying, receiving or concealing stolen property.
June 19, 1980 — The Randolph County deputy district attorney had a telephone conversation with the Georgia governor's office wherein he learned that he incorrectly initiated extradition proceedings when he should have followed the procedure set forth in the Alabama Uniform Mandatory Disposition of Detainers Act,post. The deputy district attorney then mailed a letter to the Georgia Department of Offender Rehabilitation informing those authorities that Alabama was placing a detainer against the defendant on charges of second degree burglary and grand larceny.
June 20, 1980 — The Alabama governor's office received the defendant's extradition papers which were returned from the governor of Georgia.
September 8, 1980 — The Randolph County deputy district attorney received acknowledgment from Georgia authorities that a detainer had been filed with them against the defendant based on second degree burglary and grand larceny charges.
October 1980 — Defendant was notified by Georgia authorities of the Alabama detainer.
November 17, 1980 — Defendant filed a request to be brought to trial in Alabama on the burglary and grand larceny detainer pursuant to art. III of the Detainers Act.
February 16, 1981 — Defendant was returned to Alabama.
February 17, 1981 — Defendant was arraigned and an attorney was appointed for him by the court.
March 20, 1981 — Defendant filed a motion to dismiss for lack of a speedy trial.
April 16, 1981 — Defendant's motion to dismiss was denied. Defendant was tried and convicted of buying, receiving or concealing the Chevrolet pickup truck and was later sentenced to ten years' imprisonment. This was the first term of court since defendant's request for trial.
There is no talismanic rule pronouncing when a criminal defendant has been denied his constitutional right to a speedy trial. Instead, we must weigh the conduct of the prosecution against that of the defendant on a case-by-case basis. Whitley v.State, 392 So.2d 1220 (Ala.Cr.App.), cert. denied,392 So.2d 1225 (Ala. 1980); Noe v. State, 391 So.2d 151 (Ala.Cr.App. 1980). This ad hoc balancing process prescribed by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), involves the assessment of four factors: (1) length *Page 961 
of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant.
 Length of Delay
The length of delay acts as a "triggering mechanism," and the delay must be "presumptively prejudicial" in order to merit inquiry into the three other balancing factors. Barker, supra;Watson v. State, 389 So.2d 961 (Ala.Cr.App. 1980). A defendant's speedy trial clock is tripped "when a criminal prosecution has begun and extends only to those persons who have been `accused' in the course of that prosecution." United States v. Marion,404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); Watson, supra. In cases where a formal indictment has not yet been returned, a person becomes an "accused" when he is arrested and charged.Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303,46 L.Ed.2d 205 (1975); Prince v. State, 354 So.2d 1186
(Ala.Cr.App.), cert. denied, 354 So.2d 1193 (Ala. 1977).
In the instant case the appellant's arrest on August 4, 1978, constituted the initiation of criminal proceedings for the purpose of applying the Barker test, rather than February 6, 1979, the date on which he was formally indicted. Therefore, the length of time between appellant's arrest and trial on April 16, 1981, was approximately two years and nine months. While we recognize that there is no fixed length of time that is considered to be per se reasonable, we conclude that this time span is "presumptively prejudicial," Foster v. State, 45 Ala. App. 323, 229 So.2d 913, cert. denied, 285 Ala. 754, 229 So.2d 915
(1969), and mandates an investigation of the remaining Barker
factors.
 Reason for Delay
Appellant was duly indicted at the first scheduled grand jury term following his preliminary hearing. This preindictment delay of seven months was not inordinate and must be considered as a delay "made necessary by the law itself." Cook v. State,333 So.2d 855 (Ala.Cr.App.), cert. denied, 333 So.2d 858 (Ala. 1976). The State claims that the delay between the date of the indictment, February 6, 1979, and May 1979, when appellant was incarcerated in the Georgia penitentiary and was available to Alabama process, must be blamed on the assertions of appellant's attorney, Doc Davis. Davis repeatedly told the Randolph County deputy district attorney, Sandy Holliday, that the appellant was dying of cancer. Holliday testified at the hearing on the motion to dismiss that he "remember[s] him [Doc Davis] saying that he [appellant] was going to die and we would be wasting our time to come get him." Holliday further reiterated that he was "led to believe Mr. Smith was in his death bed."
Holliday claims that, while the appellant was released from the Georgia penitentiary on appeal bond from May 16, 1979, until February 6, 1980, when he was rearrested in Georgia on the Randolph County charges, his office had no knowledge of appellant's whereabouts. However, Holliday and Sheriff I.B. Moore admitted that there were rumors during this time that appellant was in their county and was seen periodically. The State asserts that as soon as they discovered the appellant was in neighboring West Georgia in early 1980 they had him apprehended and incarcerated in the Heard County, Georgia, jail.
Apparently the appellant was charged with several sequences of criminal acts in East Alabama and West Georgia both before and after the crime charged herein occurred. Some of the delay during these thirty-three months was because of confusion arising from the different charges, some interrelated and some distinct. However, an accused's right to a speedy trial remains undiminished even when he is serving a prison sentence in a sister state. Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575,21 L.Ed.2d 607 (1969). Randolph County officials knew as early as September 1978 that appellant was tried and convicted in Georgia. Therefore, appellant was "realistically available" to Alabama for his return from Georgia for about eight months prior to his release on appeal *Page 962 
bond. Nevertheless, Alabama authorities never attempted to have the appellant returned to answer the Alabama charges. However, mere inaction by the State must be weighed against the State less heavily than deliberate prosecutorial delay. Corn v. State,387 So.2d 275 (Ala.Cr.App.), writ denied, 387 So.2d 280 (Ala. 1980). Moreover, the State's inaction can be attributed here to the actions of defendant's attorney misrepresenting to the prosecutor that appellant was going to die. Also, the appellant was not "realistically available" to Alabama for ten months while he was "at large" on the Georgia appeal bond.
The remaining delay must be weighed against the State. Turnerv. State, 378 So.2d 1173 (Ala.Cr.App.), writ denied,378 So.2d 1182 (Ala. 1979). Deputy District Attorney Holliday attempted to extradite the appellant and was informed by Georgia authorities that the proper procedure was to initiate process under the Alabama Uniform Mandatory Disposition of Detainers Act, § 15-9-80
et seq., 1975 Ala. Code, an act that had been in effect for two years. Once Holliday became aware of his error, he then only partially complied with the act by writing a letter requesting that a detainer be placed on appellant while incarcerated in Georgia and based on a Randolph County indictment for burglary in the second degree and grand larceny. Georgia acknowledged receipt of this request for a detainer. Holliday never notified Georgia under art. IV of the Act requesting temporary custody of the appellant to be tried on those charges. This caused the delay from February 1980 to November 1980 when appellant requested that he be returned for trial under art. III of the Act. The remaining months between November 1980 and trial in April 1981 can be attributed as a necessary delay occasioned by law. Cook, supra.
Therefore, roughly ten months of this thirty-three months' delay must be weighed against the State.
 Defendant's Assertion of His Right
A criminal defendant has no duty to bring himself to trial. While the defendant's timely or untimely assertion of his speedy trial right is one of the balancing factors enumerated in Barker,supra, the Supreme Court in that landmark decision placed the primary burden on the courts and prosecutors to assure that cases are brought to trial. Appellant testified that his attorney, Doc Davis, had informed him that his Alabama charges were in the "dead file." Appellant claims that he had no knowledge that there were any outstanding Alabama charges until he was arrested in Georgia on February 6, 1980. It was up to the State to show that the appellant had knowledge of these charges before this time.Prince v. Alabama, 507 F.2d 693 (5th Cir.), cert. denied,423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108 (1975); Mayberry v. State,48 Ala. App. 276, 264 So.2d 198, cert. denied, 288 Ala. 746,264 So.2d 207 (1972).
After appellant's February 1980 arrest, there was confusion as to whether Georgia authorities would return appellant to Alabama since he still had time remaining to serve on the Georgia theft sentence. Appellant claims that he believed the matter was awaiting the decision of the Georgia governor. In the meantime, Alabama erroneously began extradition of the appellant from Georgia. On June 19, 1980, a detainer was placed against appellant and Georgia acknowledged receipt of the detainer in a letter dated September 18, 1980. This correspondence indicated that Georgia officials would inform the appellant that a detainer had been filed against him, and appellant testified that he was so notified in mid-October 1980. By mid-November, appellant had complied with the formal requirements of art. III of the Detainers Act without the assistance of counsel.
Article III provides the method by which a defendant incarcerated in one state may request to be transferred to another state to stand trial on charges for which the other statehas placed a detainer on him. Obviously, since appellant had no knowledge of an Alabama detainer until mid-October 1980, he promptly asserted his right by initiation of art. III mechanisms. In addition, appellant's motion to dismiss for lack of a speedy trial was filed on March 20, *Page 963 
1981, only one month after appellant was arraigned and appointed an attorney. Even though we are aware that the State complied with its duty to "make a diligent good-faith effort to secure the presence of the accused" from Georgia "upon demand" and "afford him trial" since he was tried at the first court term following his art. III request, we find that this factor must be weighed in favor of the appellant.
 Prejudice to the Defendant
Since the preceding three factors do not unanimously coalesce in appellant's favor, Prince v. Alabama, supra, the prejudice suffered by the appellant must still be considered in the balancing process. This prejudice must be assessed in light of the interests which the speedy trial right was designed to protect. These interests were described in Barker,92 S.Ct. at 2193 as: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; (iii) to limit the possibility that the defense will be impaired." The Fifth Circuit Court of Appeals in Prince v. Alabama categorized these interests into two basic types of prejudice: (1) prejudice to defendant's defense and (2) prejudice to defendant's person.
Throughout appellant's hearing on his motion to dismiss for lack of a speedy trial, various witnesses testified that their memory was impaired due to the passage of time. Appellant testified that the two codefendants were no longer available as witnesses. However, the State offered incriminating statements given by these witnesses to the defense which the defense apparently declined. The major prejudice incurred by the appellant was the preclusion of the possibility that the Alabama and Georgia sentences could run concurrently. Appellant claims that upon receipt of the Alabama detainer Georgia transferred him from medium to close security inmate status resulting in a reduction of recreational and other privileges. The pendency of the Alabama detainer adversely affected appellant's possible entry of rehabilitative and parole programs in Georgia. Although appellant's testimony to this effect was self-serving and conjectural, the State advanced no evidence to contradict it, and it is thus sufficient to establish prejudice. Slaughter v. State,377 So.2d 632 (Ala. 1979).
After analyzing and weighing these factors, we find that appellant was unconstitutionally denied a speedy trial. Therefore, his motion to dismiss was erroneously denied by the trial court.
While appellant's counsel did not raise the issue in a sufficiently specific manner at the trial below, there was a strong probability that appellant was illegally transferred to Alabama pursuant to the Detainers Act. The Act provides that the "sending state," Georgia, shall temporarily transfer custody to the "receiving state," Alabama, for the determination of all charges or indictments for which a detainer has been lodgedagainst the defendant.
Appellant was tried and convicted for buying, receiving or concealing stolen property. The only detainer Georgia authorities acknowledged receiving against appellant from Alabama was for burglary in the second degree and grand larceny. There was no detainer placed against the appellant based on a buying, receiving or concealing charge. Moreover, the record reflects that a charge of burglary in the second degree was nol-prossed in 1978 and its companion case charging grand larceny was likewise nol-prossed in 1978. While other grand larceny charges stemming from different criminal incidents were outstanding against the appellant, it seems likely that these two nol-prossed companion cases were the basis of the Alabama detainer sent by Randolph County officials to Georgia. If so, the detainer had no substance or merit and was therefore ineffectual for sending the appellant back to this state. It is, however, unnecessary to rule on that issue, other than to make the above observation. Our decision in this case is based on the determination that the appellant was denied a speedy trial. Pursuant to Strunk v. United States,412 U.S. 434, 93 S.Ct. 2260, *Page 964 37 L.Ed.2d 56 (1973), the instant charge must be dismissed.
REVERSED AND RENDERED.
All the Judges concur.