Lloyd N. HOVEE, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 5044.

Supreme Court of Wyoming.

June 29, 1979.

James H. Barrett, Cheyenne, signed the brief and appeared in oral argument on behalf of appellant.

John D. Troughton, Atty. Gen., and Leonard D. Munker, Senior Asst. Atty. Gen., signed the brief for appellee and Munker appeared in oral argument on its behalf.

Before McCLINTOCK, THOMAS, ROSE, JJ., GUTHRIE, J., Retired, and SAWYER, District Judge.

SAWYER, District Judge.

Defendant-appellant, Lloyd N. Hovee, was indicted in two (2) separate indictments which cumulatively contained five (5) counts of embezzlement of State money, funds, or other property and one (1) count of conspiracy to embezzle State funds, money, or other property. The two cases were consolidated for trial, and the appellant was convicted on all six (6) counts. We will affirm the conviction.

The five issues presented for review are:

1. Was appellant denied his constitutional right to a fair and speedy trial by virtue of pre-arrest and pre-indictment delay and were appellant's rights to a fair trial prejudiced as a result of such pre-arrest and pre-indictment delay?

2. Was there a failure of proof of the essential allegation of the complaint that the funds involved in each count of the indictment were funds, money, or property of the State of Wyoming?

3. Was there a failure on the part of the State of Wyoming and in the indictment to completely and specifically set forth the charges involved in § 6–7–305 of the Wyoming Statutes, 1977, or is § 6–7–305 unconstitutional and void for vagueness?

4. Was the evidence and testimony presented at trial sufficient to prove criminal intent and knowledge on the part of the appellant, either directly or circumstantially, that the funds used and items received were, in fact, purchased with State funds or were otherwise the property of the State of Wyoming?

5. Was appellant's testimony improperly ignored or discounted by the jury in arriving at a determination of appellant's guilt on the charges?

The appellant served as Secretary of the Board of Charities and Reform between 1963 and 1976. In this position he had power of expenditure of funds and supervision on behalf of the State institutions. One of the funds was the Keiffer-Orchard Funds which was started for the benefit of the guests of the Wyoming Pioneer Home at Thermopolis and was under the control of the State Board of Charities and Reform of the State of Wyoming. These funds were administered by the State through its authorized administrators, the appellant as Secretary of the State Board of Charities and Reform and Kenneth R. Brighton as Superintendent of the Wyoming Pioneer Home. Mr. Brighton died on February 19, 1977, before the appellant was indicted. The State examined the funds and completed the audit report of the Wyoming Pioneer Home on March 29, 1976. Mr. Brighton and Mr. Hovee resigned shortly thereafter, and criminal charges were filed against Mr. Brighton on the 2nd day of June, 1976. The appellant was first indicted by a State-wide grand jury on November 30, 1977, with one count of conspiracy involving the deceased Kenneth R. Brighton and three counts of embezzlement of public funds, money, or other property. On February 10, 1978, the grand jury handed down a second indictment against the appellant which corrected a problem of Count 4 of the original indictment and added two additional charges of embezzlement.

1. Was appellant denied his constitutional right to a fair and speedy trial by virtue of pre-arrest and pre-indictment delay and were appellant's rights to a fair trial prejudiced as a result of such pre-arrest and pre-indictment delay? We think not.

■ The United States Court of Appeals for the Ninth Circuit in *United States v. Mays*, 549 F.2d 670 (1977), where approximately four and one-half years elapsed prior to indictment and three witnesses died, held that the defendants must show not only what evidence was lost due to the delay, but also the way the evidence would have helped in their defense against the charges. In the instant case, there is no

showing that the testimony of the deceased Kenneth R. Brighton would have assisted appellant.

In 1971, the Supreme Court of the United States in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971) stated:

"* * * In our view, however, the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused.' * * *"

In 92 S.Ct. at 463 of *Marion*, the Court continued:

"Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case."

More than five years later in considering pre-indictment delay, the Supreme Court stated in the case of *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 2049–2050, 52 L.Ed.2d 752 (1977):

"* * * From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried. These costs are by no means insubstantial since, as we recognized in *Marion*, a formal accusation may 'interfere with the defendant's liberty, * * * disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.' 404 U.S., at 320, 92 S.Ct., at 463. From the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is equally unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited. And from the standpoint of the courts, such a requirement is unwise because it would cause scarce resources to be consumed on cases that prove to be insubstantial, or that involve only some of the responsible parties or some of the criminal acts. Thus, no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so." (Footnotes omitted.)

This claim, based solely on pre-arrest and pre-indictment delay, does not raise any question under the speedy trial provision of either the Sixth Amendment of the United States Constitution or Art. 1, § 10, of the Wyoming Constitution, as demonstrated from the preceding Supreme Court authorities. See also *State v. Caffey*, Mo., 438 S.W.2d 167, 171 (1969); and *State v. Saiz*, 103 Ariz. 567, 447 P.2d 541, 543–544 (1968).

Possibly the Wyoming legislature at some future time may enact a statute of limitations pertaining to the time for filing criminal charges. To date they have not done so, and we shall concern ourselves only as to whether the defendant's rights under the State and Federal constitutions have been violated.

Appellant in the case before the Court has failed to prove that he was prejudiced by the pre-indictment delay or that the delay was intentional to gain tactical advantage, and we hold that he was not deprived of due process.

After the indictment was filed on November 30, 1977, pretrial motions and other matters were disposed of promptly, and the

trial was commenced on April 24, 1978. Post-arrest delay is therefore not an issue in this case, and we are not in any way modifying our previous decisions on defendant's rights to a speedy trial. This was most recently reviewed by this Court in *Cherniwchan v. State*, Wyo., 594 P.2d 464 (1979).

2. There was sufficient proof on the essential allegation of the complaint that the funds involved in each count of the indictment were funds, monies, or property of the State of Wyoming.

■■ The Keiffer-Orchard Funds were made up of donations to the Wyoming Pioneer Home, a State institution, for the benefit of its guests and were administered by the appellant and Mr. Brighton as employees of the State of Wyoming. Under Instruction No. 14,[1] the jury was instructed that one of the essential elements of the crime of embezzlement was that the defendant was entrusted with the collection, receipt, safekeeping, transfer and disbursement of money, funds, securities, bonds, choses in action or other property belonging to, or under the control of the Wyoming Pioneer Home, an institution of the State of Wyoming. There was sufficient evidence presented at the trial for the jury to find as it did that the property at issue was, in fact, property belonging to the State. The evidence is clear the Keiffer-Orchard Funds were considered by appellant and Mr. Brighton to be funds intended for the use of the Wyoming Pioneer Home, that withdrawals were subject to the approval of the State Board of Charities and Reform and required the signature of the Superintend-

ent of the Wyoming Pioneer Home and the appellant as the Secretary of the Board of Charities and Reform. Although a person is not in actual possession of public funds or property, he may be deemed to have control of such funds or property within a statute making misappropriation by one in possession or control an offense, and a person not in possession of public money or property may have the money or property under his control where it is under his discretion. 26 Am.Jur.2d Embezzlement, § 15, at page 565; *People v. Knott*, 15 Cal.2d 628, 104 P.2d 33, 128 A.L.R. 1367 (1940); *State v. McCormick*, 7 Ariz.App. 576, 442 P.2d 134 (1968).

■ 3. The State of Wyoming did completely and specifically indict the appellant. Rule 9(a), W.R.Cr.P., provides the indictment or information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. The United States Supreme Court has said an indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense, *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). The first indictment filed November 30, 1977, with the dismissal of Count 4 thereof, and the second indictment filed February 10, 1978, adequately charged appellant with conspiracy and five counts of embezzlement of public funds, setting forth in detail the various items

1. "INSTRUCTION NO. 14

"The material allegations of the Indictments filed herein and the essential elements of the crimes of embezzlement with which the defendant is charged, are as follows:

"1. That the defendant was entrusted with the collection, receipt, safekeeping, transfer and disbursement of money, funds, securities, bonds, choses in action or other property belonging to, or under the control of Wyoming Pioneer Home, an institution of the State of Wyoming.

"2. That the defendant did, in fact, receive the money, funds, securities, bonds, choses in

action or other property in the course of his employment with the Board of Charities and Reform, State of Wyoming.

"3. That the defendant did convert the money, funds, securities, bonds, choses in action or other property to his own use or to the use of another person in any manner whatever.

"4. That this conversion was done contrary to law, which means that the defendant must have knowingly and intentionally with criminal intent appropriated and converted said money and property."

that involved the appellant in the offenses charged as well as the checks issued, some of which were signed by the appellant.

Appellant had filed a Motion for a Bill of Particulars, and pursuant to an Order of the District Court, the State filed a Bill of Particulars on April 7, 1978, further informing the appellant as to description of certain items and the location and possession of them. The two indictments fully apprised the appellant of the charges against him with a reasonable degree of certainty, which included six separate offenses under Wyoming law and gave him full and complete notice of the charges against him. Section 6–7–305, Wyoming Statutes 1977, is not unconstitutional and void for vagueness as contended by appellant. This statute sets forth the facts and elements necessary in an indictment to apprise a defendant of the charges against him. *State v. Faulkner*, 75 Wyo. 104, 292 P.2d 1045 (1956).

4. Was the evidence and testimony presented at trial sufficient to prove criminal intent and knowledge on the part of the appellant? The testimony is basically undisputed that, among other items, a television set valued at $795 purchased from S.D.C., formerly known as the Ward Terry Company, paid for from Keiffer-Orchard Funds by a check signed by the appellant was in the possession of the appellant at his home, together with a stereo and three eight-track stereo tapes. There is evidence, direct or circumstantial, to support all six counts of the two indictments, that all the items alleged to be embezzled were purchased from Keiffer-Orchard Funds with checks signed by the appellant and Mr. Brighton. The appellant stipulated that he signed two invoices as Kenny Brighton. This Court has addressed the question of the sufficiency of evidence as to proof of

intent and knowledge on several occasions. We have held intent may be inferred from the conduct of a defendant and from circumstantial evidence, *Fuller v. State*, Wyo., 568 P.2d 900 (1977); *State v. Faulkner*, supra; *Cullin v. State*, Wyo., 565 P.2d 445 (1977). We stated in *Russell v. State*, Wyo., 583 P.2d 690 (1978), at page 700:

"Because proof of guilty knowledge, like proof of intent, is rarely capable of establishment by direct evidence, circumstantial evidence—independent facts from which an inference of the ultimate fact to be established may rationally be drawn in light of common experience—most often is the only manner of proof available. * * * Perhaps from the variety of circumstantial evidence pointing to the defendant's guilt, other inferences relating to defendant's knowledge can be drawn; yet it is for the jury, not this court on appeal, to sort out any conflicts. * * * *"

The United States Supreme Court in considering the standards to be applied in determining knowledge has not hesitated to hold that the jury may conclude from circumstantial evidence that an accused possessed the requisite knowledge for the statutory offense. *United States v. Gallo*, 177 U.S.App.D.C. 214, 543 F.2d 361 (1976). The District Court in the instant case, in instructing as to the essential elements of the crimes of embezzlement, set forth that:

"4. That this conversion was done contrary to law, which means that the defendant must have knowingly and intentionally with criminal intent appropriated and converted said money and property."

Instruction No. 19 [2] properly instructed the jury as to guilty knowledge, and no objection was made to this instruction.

2.        "INSTRUCTION NO. 19

"With reference to the charges contained in the several Counts of the Indictments the State is required to establish the guilty knowledge of the defendant beyond a reasonable doubt, because the intent with which the conversion was made to his own use, or to the use of some other person, if made at all, constitutes the gist of the offense.

"However, it is not necessary to prove guilty knowledge or specific intent by direct, positive, and independent evidence. The jurors may draw the inference as they draw any other inferences from any facts in evidence which to their minds, fairly prove its existence. In considering the question, the jurors may take into consideration the nature of the defendant's acts constituting the conversion, if any, of the money or property in each of

5. Appellant contends his testimony was improperly ignored by the jury in finding him guilty. He does not contend that the Court improperly instructed the jury as to the credibility of the witnesses. The Court's Instruction No. 1 was properly given, and the last paragraph of this instruction adequately instructs the jury as to the credibility of all the witnesses.

"The jury is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. You should take into consideration their demeanor upon the witness stand, their apparent intelligence or lack of intelligence, their means of knowledge of the facts testified to, the interest, if any, which any witness may have in the outcome of this trial, the prejudice or motives, or feelings of revenge, if any, which have been shown by the evidence. In so doing, you may take into consideration all of the facts and circumstances in the case and give such weight as you think the same are entitled to, in the light of your experience and knowledge of human affairs."

The general rule in criminal cases when the issue of the sufficiency of the evidence is raised on appeal is well settled. The appellate courts view the evidence in the light most favorable to the prosecution and all reasonable inferences are resolved in favor of the State, leaving out of consideration any evidence in conflict therewith. *Russell v. State*, supra; *Fuller v. State*, supra; *Jones v. State*, Wyo., 568 P.2d 837 (1977); *Phillips v. United States*, 10th Cir., 406 F.2d 599 (1969); *Anderson v. United States*, 8th Cir., 369 F.2d 11 (1966). Accordingly, we find that there is more than sufficient substantial evidence to support the jury's verdict of guilty as to all six counts.

Affirmed.

the Counts, the conduct and declaration of the defendant, and all other circumstances calculated to throw light upon the intention with which the conversion, if any, was made."