Gilbert Paul VERNIER, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–53.

Supreme Court of Wyoming.

Jan. 12, 1996.

John P. LaBuda of Goddard, Perry & Vogel, Buffalo, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Assistant Attorney General, Cheyenne, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

This case manifests an effort by Gilbert Paul Vernier (Vernier) to persuade this court to adopt a judicial statute of limitation in a criminal case. Vernier contends his right to due process preserved by the Fourteenth Amendment to the Constitution of the United States was infringed when the State, after investigating allegations of indecent liberties and second-degree sexual assault in 1984, proceeded to prosecute him for those crimes in 1994. Vernier fails to assert any improper motivation by the prosecutor in connection with the pre-charging delay and, even though he asserts substantial prejudice due to the ten-year delay, he does not bring himself within our cases addressing that concept. Consequently, his assertions of prejudice due to loss of evidence and the failure of his memory articulate only the usual reasons justifying statutes of limitation. Vernier also

contends the Information is so vague and indefinite as to deny him the right to defend himself under the Sixth Amendment to the Constitution of the United States and Article 1, Section 10 of the Constitution of the State of Wyoming. In this regard, he also asserts the potential loss of his protection against double jeopardy found in Article 1, Section 11 of the Constitution of the State of Wyoming. We are not persuaded to follow Vernier's invitation to adopt a judicial statute of limitation. We hold Vernier's failure to demonstrate substantial prejudice to his rights to a fair trial and the presence of some intentional effort to obtain a tactical advantage due to the delay forecloses relief for pre-charging delay. In accordance with precedent, the Information filed was sufficient to enable him to prepare a defense and protect him from potential future charges arising out of the same conduct. We affirm the Judgment and Sentence entered in the district court.

The issues stated by Vernier, in his Brief of the Appellant, are:

I. The Pre–Accusation delay spanning ten (10) years violated the Appellant's due process rights of the Fourteenth Amendment to the United States Constitution and his right to a fair trial pursuant to the Sixth Amendment to the United States Constitution due to the fact the delay resulted in the loss of evidence, hindered the Defendant's right to effective cross examination, and caused the Government to be unable to specify in the information when the alleged acts occurred [in counts II and III].

II. The charging document in this case was fatally defective and vague thereby violating the Appellant's Sixth Amendment right under the United States Constitution and Article I, § 10 and § 11 of the Wyoming Constitution.

In the Brief of Appellee filed by the State, the issues are said to be:

I. Were Appellant's due process rights violated by the filing of criminal charges ten years after the offenses occurred?

II. Did the Information adequately inform Appellant of the essential elements of the crimes for which he was charged?

Vernier is the sixty-nine-year-old grandfather of the victims. In July of 1984, ME, then seven years old, supported by her sister, JV, informed their mother, "Grandpa touched me in a bad way." An investigation of these claims was conducted by the Department of Family Services and the Sheridan County sheriff's department. Two interviews of the victim and her sister were conducted and recorded on audio tape. The second tape was transcribed by a lieutenant in the sheriff's department who was present during the interview. No charges were filed at that time, and the investigation was terminated.

Ten years later, in March of 1994, LL, another granddaughter, reported to the sheriff's department that, in June, July, and August 1977, she had been molested when she was nine years old and living with Vernier and his wife in Ranchester.[1] Two weeks after LL presented her Information relating to sexual abuse, ME again informed the sheriff's department that Vernier had sexually assaulted her in 1984, during the time she lived with him and his wife along with her father and her sister, JV. JV provided corroboration, stating that Vernier routinely took ME into the bedroom and locked the door. She could hear ME crying, and Vernier telling ME to be quiet. ME, in turn, said that JV kicked and screamed at the locked door while Vernier was sexually abusing ME. ME advised that the abuse occurred several times a week from March through May 1984, while her grandmother was at work.

During the same time frame in 1994, other evidence emerged about sexual abuse perpe-

---

**1.** The Information filed June 3, 1994, alleged that the events charged in Count I occurred on or about the months of June, July, and August 1978, and the events resulting in the charges in Counts II and III occurred on or about the year 1984. On October 12, 1994, an Amended Information was filed, and it alleged that the events constituting Count I occurred on or about mid-June to mid-August 1977, and the events leading to Counts II and III occurred on or about March through May of 1984. Vernier prefers to argue based upon the allegations of the initial Information, but we rely upon the allegations in the Amended Information, the one to which Vernier entered his plea.

trated by Vernier. DH and DP, Vernier's daughters, recounted repeated sexual abuse and rape by their father when DH was between the ages of twelve and sixteen and DP between the ages of eight and thirteen. Two grandsons disclosed they also had been sexually abused by Vernier.

Following the 1994 investigation by the sheriff's department, the State charged Vernier with two counts of indecent liberties in violation of WYO.STAT. § 14–3–105 (1993) and one count of second-degree sexual assault proscribed by WYO.STAT. § 6–2–303(a)(v) (1988).[2] At his arraignment, Vernier entered a plea of not guilty and filed a motion for a bill of particulars requesting that the State be required to furnish specific dates for the alleged offenses; a motion for discovery requesting the State furnish the audio tape recordings from the 1984 interviews of ME, the victim named in Counts II and III; and other motions not material to his appeal. The district court denied Vernier's motion for a bill of particulars, and no ruling was made on his motion for production of the audio tapes.

Later, Vernier moved to dismiss, claiming the State intentionally had delayed filing charges. He contended his right to a fair trial was prejudiced by the lengthy delay since the alleged offenses were committed, the lack of specificity as to dates, and loss of potential evidence. The district court denied the motion to dismiss, holding Vernier had failed to demonstrate both an intentional delay to gain tactical advantage by the State and substantial prejudice to his right to a fair trial. Vernier then entered conditional pleas of *nolo contendere,* as provided in WYO. R.CRIM.P. 11(a)(2),[3] to all three counts in the Amended Information. Vernier reserved the right to appeal the rulings of the district court in denying his motion for a bill of particulars and his motion to dismiss. Vernier was sentenced to not less than five, nor more than seven, years on each count, with the sentences to run consecutively, and he was ordered to pay $912 in restitution to LL and $300 to the Crime Victims Compensation Fund. Vernier's appeal is from that Judgment and Sentence.

■ Vernier quotes the Fourteenth Amendment to the Constitution of the United States,[4] stating " * * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *." Vernier contends the pre-accusation delay of ten years from 1984, when the events relating to Counts II and III were first investigated, until 1994, when charges were actually filed, violated his right to due process. He cites

2. WYO.STAT. § 14–3–105 (1993) defines the crime of indecent liberties as follows:

(a) Any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony, * * *.

(b) As used in this section, "child" means a person under the age of eighteen (18) years. WYO.STAT. § 6–2–303(a)(v) (1988) provides:

(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

* * * * * *

(v) At the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim; * * *.

3. WYO.R.CRIM.P. 11(a)(2) provides:

(a) *Alternatives.*

* * * * * *

(2) Conditional Pleas.—With the approval of the court and the consent of the attorney for the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

4. Vernier also asserts in this issue that his right to a fair trial pursuant to the Sixth Amendment of the United States Constitution was breached but he fails to present that argument. We agree with *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, *reh'g denied,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977), and *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), that the Sixth Amendment right to speedy trial has no application to delay which precedes both arrest and charge.

*United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, *reh'g denied,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977), for the proposition that statutes of limitation in criminal cases provide protection against undue delay in charging and are "the primary guarantee against bringing overly stale criminal charges." *Lovasco,* 431 U.S. at 789, 97 S.Ct. at 2048. Acknowledging Wyoming has no statutes of limitation in criminal cases, Vernier strongly contends, particularly in his oral argument, that the judicial imposition of a statute of limitation is necessary to protect him from the overly stale charges.

In a case involving a longer period of delay, but perhaps distinguishable because a prior investigation was not conducted, we discussed statutes of limitation with respect to criminal cases and said:

> At common law there was no limitation period for the prosecution of any criminal offense. Where no statute of limitations pertaining to criminal offenses has been adopted, prosecution for such an offense may be commenced at any time during the life of the offender. When statutes of limitations governing the commencement of prosecution for specific crimes are adopted, they are said to be acts of grace under which the sovereign surrenders its right to prosecute. Being acts of grace, statutes of limitations may be changed or repealed without violating ex post facto prohibitions; but in the final analysis, **whether statutes of limitations governing prosecution of criminal offenses should be adopted at all is a matter solely for the legislature.**

*Story v. State,* 721 P.2d 1020, 1026 (Wyo. 1986), *cert. denied,* 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 405 (1986) (citations omitted, emphasis added).

The proposition articulated there—that since Wyoming has no statutes of limitation in criminal cases, the prosecution may be commenced any time during the life of the offender—has been reaffirmed in a number of cases. *McDermott v. State,* 897 P.2d 1295 (Wyo.1995); *Parker v. State,* 882 P.2d 1225 (Wyo.1994); *Fortner v. State,* 843 P.2d 1139 (Wyo.1992); *Phillips v. State,* 835 P.2d 1062 (Wyo.1992).

■ The legislature in Wyoming has yet to adopt a statute of limitation, even though the point has repeatedly been made that Wyoming has none. There is no question the legislature would have the authority to enact a statute of limitation, and the failure to adopt one does not appear to be oversight. Instead, it represents a conscious decision to refrain from extending grace through a statute of limitation in criminal cases. Consistently with our statement in *Story,* 721 P.2d at 1026, "whether statutes of limitations governing prosecution of criminal offenses should be adopted at all is a matter **solely for the legislature**" (emphasis added). We decline the proposition of Vernier that we adopt a judicial statute of limitation in this case.

■ We proceed to address the constitutional claim arising out of pre-charging delay in the context of our prior cases. We recently reiterated the test, saying:

> Wyoming has no statute of limitations for criminal offenses, and prosecution for such offenses may be commenced at any time during the life of the offender. However, when a delay in bringing charges results in prejudice to a defendant, due process considerations may arise. In order to require dismissal of a charge, it is necessary that a preindictment delay cause "substantial prejudice to [appellant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Story [v. State],* 721 P.2d [1020,] 1027 [ (Wyo.1986) ], *quoting from United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). **Substantial prejudice requires the showing of the loss of a witness, exhibit or other evidence, the presence of which would probably bring a different result.**
>
> *Phillips v. State,* 835 P.2d 1062, 1069 (Wyo. 1992) * * *. The burden of proof to make the required showing is on the defendant. *See United States v. Engstrom,* 965 F.2d 836, 838–39 (10th Cir.1992).

*McDermott v. State,* 897 P.2d 1295, 1300 (Wyo.1995) (citations omitted, emphasis added).

In *Fortner*, 843 P.2d at 1142, we stated we have adopted the rule from *Lovasco* and *Marion*, and we clarified the application of the test for pre-accusation delay:

> Wyoming has taken a *conjunctive* approach to the *Marion* rule which requires the defendant to establish *both* an improper prosecutorial motivation which caused the delay and substantial prejudice resulting from it. *Cf. State v. Gonzales*, 110 N.M. 218, 794 P.2d 361, 363–67 (Ct.App. 1990), *aff'd as modified*, 111 N.M. 363, 805 P.2d 630 (1991) (discussing the "conjunctive" and "balancing" approaches to the *Marion* test.)

Vernier makes no claim of any improper motivation by the prosecutor with respect to pre-indictment delay. Instead, Vernier's interpretation of the sequence of events is that the decision of the prosecutor not to file in 1984 manifests the lack of any basis for the accusations. He contends that, otherwise the prosecutor would have filed the charges then, and he points out no new evidence concerning Counts II and III was discovered after 1984. In his argument before the court, he pressed the proposition that, because there was no basis to file charges in 1984, there was still no basis in 1994. We have firmly adopted and followed the doctrine of prosecutorial discretion. *Hansen v. State; Pappan v. State*, 904 P.2d 811 (Wyo.1995); *Billis v. State*, 800 P.2d 401 (Wyo.1990); *Petition of Padget*, 678 P.2d 870 (Wyo.1984); *State v. Faltynowicz*, 660 P.2d 368 (Wyo.1983) (Thomas, J., concurring). Consequently, the failure to file charges in 1984 appears to be equivocal rather than representing a conclusion that the evidence would not justify prosecution.

The Supreme Court of the United States analyzed reasons for pre-accusation delay in *Lovasco*, and it concluded no due process violation exists with respect to investigative delay. Exploring investigative delay and its effect on the charging of defendants with a crime, the court explained that it could apply to a case where probable cause was lacking, because "it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause." Investigative delay could also pertain in a case where probable cause existed, for "prosecutors are under no duty to file charges * * * before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt," as charging would "increase the likelihood of unwarranted charges being filed," cause "potentially fruitful sources of information to evaporate," and "cause scarce resources to be consumed on cases that prove to be insubstantial." Finally, with respect to investigative delay, in a case where "sufficient evidence to prove guilt" exists, the court noted that to compel immediate charging "would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases." *Lovasco*, 431 U.S. at 791–92, 794, 97 S.Ct. at 2049–51. A prosecutor is only required to file the charges if the motive for delay is an effort to gain tactical advantage over the accused, thus, creating a need to protect the defendant from oppressive delay.

■ This record discloses that, in addition to the evidence provided in 1984, a substantial increase in the quality and quantity of the evidence was available in 1994. While the basis of the prosecutor's decision not to pursue the case in 1984 may be mysterious, it is also clear the case was much more substantial in 1994. We conclude there was no improper motive by the prosecutor for obtaining a tactical advantage in connection with this delay in filing. We previously noted Vernier does not argue to the contrary.

■ Vernier asserts the several aspects of prejudice because of pre-accusation delay, including the loss of two 1984 audio tapes, his loss of memory, the loss of a possible alibi defense, and the State's failure to perform a medical examination on the alleged victim in 1984. While we recognized in *Fortner*, 843 P.2d at 1143, that loss or destruction of exculpatory records after many years might provide a claim of prejudice attributable to prosecutorial delay, we held that was not the case in *Fortner*. Neither do we find prejudice in this regard in this case. Vernier speculates the loss of the tapes precluded him from obtaining exculpatory evidence or cross-examining the victim on the basis of the 1984 interviews. He argues the transcript of one of the tapes is unreliable be-

cause a sheriff's officer, not a court reporter, transcribed it and included extra notes. A similar claim with respect to a witness, not a victim, was rejected by this court in *Young v. State*, 849 P.2d 754 (Wyo.1993). In this instance, the witnesses were all still available and Vernier, at a trial, would have been afforded his constitutional right to confrontation and cross-examination. Furthermore, he eschewed the suggestion of the trial judge that he pursue discovery through depositions.

In our view, actual prejudice, not possible prejudice, is the standard that must be invoked with respect to this prong of the pre-charging delay test. We do not perceive actual prejudice to Vernier from the loss of the 1984 tapes. We hold he failed to demonstrate the requisite actual and substantial prejudice due to the loss of those tapes.

Turning to his concern with respect to his loss of memory in the passage of the ten years, as we have said, the passage of time cuts both ways:

> It is difficult to see how Appellant was prejudiced by these memory lapses, assuming they were caused by the delay. When it is the *prosecution's* witnesses who have suffered memory losses, the State is prejudiced at least as much as, or more than, the defendant.
>
>> "[D]elay is a two-edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden."

*Fortner*, 843 P.2d at 1143 (citations omitted). In this connection, Vernier also argues that, in 1984, he might have recalled an alibi that would have been helpful. He attaches no specificity to that prospect, however, such as the names of individuals with whom he spent time or activities in which he participated. He does not even generally describe his other activities. Essentially, he claims he might have an alibi, but he does not demonstrate he did have an alibi.

The victims were quite specific with respect to their recollection that sexual abuse from Vernier was inflicted "several times a week," about an "every night occurrence," and "twice a week for a couple of years," all while his wife was at work, and they were alone with Vernier. Certainly, at trial, the opportunity to cross-examine these witnesses and to impeach such testimony would have been available. Their credibility would have been an issue for the jury. Our conclusion is that, in this regard also, Vernier has failed to demonstrate prejudice attributable to pre-accusation delay, and his contention that he might have had an alibi defense is too speculative.

 As to the absence of a medical examination, WYO.STAT. § 6–2–309(d) (1988) states a medical report is not necessary to obtain a conviction of sexual assault. The failure of the State to obtain a medical report for trial does not rise to the level of a due process violation. *Sanchez v. State*, 751 P.2d 1300 (Wyo.1988). The record does not indicate, and Vernier does not articulate, that a medical examination was not accomplished for the purpose of prejudicing Vernier or in order to obtain a tactical advantage. Indeed, with respect to allegations in July 1984 of sexual abuse from March through May 1984, it is problematical whether a medical examination would have been useful.

To summarize, Vernier has neither demonstrated substantial prejudice to his right to a fair trial, nor improper motivation with respect to the pre-accusation delay. He argues about the possible lack of evidence with respect to Counts II and III in 1984 and 1994. In the ten years between 1984 and 1994, a substantial increase in the quality and the nature of the evidence is manifested. The State, indeed, had more reason to prosecute in 1994. We hold Vernier's right to due process under the Fourteenth Amendment was not violated.

Vernier also contends the charges in the Information are so vague and indefinite that he was denied his right to defend himself. As we noted, he focuses on the initial Information, but the Amended Information, to which he entered his pleas of *nolo contendere*, is more specific with respect to dates. Still, Vernier argues Count I alleges the occurrence of the crime sometime during the period of sixty days, more than seventeen

years earlier, and Counts II and III occurred during a period of ninety days, more than ten years previously. The constitutional provisions upon which Vernier pins his argument are the language in the Sixth Amendment to the Constitution of the United States, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation * * *," and Article 1, Section 10 of the Constitution of the State of Wyoming, which provides "[i]n all criminal prosecutions the accused shall have the right * * * to demand the nature and cause of the accusation * * *." The purpose of these provisions is to assure adequate notice of the accusations to the defendant to enable him to prepare a defense. In Wyo.R.Crim.P. 3(b)(1), the constitutional requirements are implemented, and the information must be "a plain, concise and definite written statement of the essential facts constituting the offense charged."

▮▮▮ In *Stewart v. State*, 724 P.2d 439, 440–41 (Wyo.1986), we applied the standards for an indictment to an information saying:

> The question of sufficiency of an indictment was resolved in *Hovee v. State*, Wyo., 596 P.2d 1127 (1979). The requirements are that an indictment is sufficient if it contains, 1) the elements of the offense charged, 2) if it fairly informs a defendant of the charge against which he must defend, and 3) if it enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. * * * In *Faltynowicz* we said:
>
> > " * * * The same standards, [of *Hovee*, supra] of course, would apply in judging the sufficiency of an information." Id., at 371.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> We have said that where the specific date is not a requirement of the crime, alleging a general time period in lieu of a specific date is sufficient to give a defendant notice and allow him to adequately prepare a defense.
>
> " * * * [W]here the charge follows the statutory language and such language contains all that is essential to constitute the crime, the indictment is sufficient. * * *"

*Boyd v. State*, Wyo., 528 P.2d 287, 289 (1974), *cert. denied* 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975).

A specific date is not essential to the commission of indecent liberties under § 14–3–105; therefore, the information supplemented by the bill of particulars was sufficient, and complied with the requirements of *Hovee v. State*, supra.

\*　　\*　　\*　　\*　　\*　　·　\*

> " * * * We have stated repeatedly that in the interests of justice and recognizing that young children cannot be expected to be exact regarding times and dates, a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence. * * * Nonsuit may not be allowed on the ground that the State's evidence fails to fix any definite time for the offense where there is sufficient evidence that defendant committed each essential act of the offense. * * *"

The Nevada Supreme Court, quoting the Idaho Supreme Court said:

> " 'It would be a very weak rule of law that would permit a man to ravish a fifteen year old girl and then say in effect: "You cannot convict me of this crime, as you did not guess the right date." * * *' "

▮▮▮ Consistently, we have not required a charge of sexual abuse of a child to state the exact date or dates in question. Instead, we have held the allegation of a general time period in lieu of a specific date is sufficient to give the defendant notice and allow him to adequately prepare a defense. *Jackson v. State*, 891 P.2d 70 (Wyo.1995) (finding a five-month general time period was sufficient); *Brown v. State*, 817 P.2d 429 (Wyo.1991) (holding a four-month time period was sufficient); *Rhodes v. State*, 462 P.2d 722 (Wyo. 1969) (stating although the victim specified no date, the occurrence as testified by the witness was not subject to challenge); *State v. Koch*, 64 Wyo. 175, 189 P.2d 162 (1948) (finding ordinarily a charge that the crime was committed at or about the time alleged in the information or within a given period

before the filing of the indictment or information is sufficient and the lack of a specific date neither prejudices a defendant nor hinders his ability to present a defense of alibi). In *Brown*, 817 P.2d at 437–38, we stated specifically, "[w]e have held that in the case of sexual abuse of a child, it is sufficient to establish the transaction rather than the exact date or dates in question."

Vernier does not complain that the elements of the offenses are not alleged. Our examination of the Information confirms the fact that they are appropriately pleaded. Instead, Vernier's challenge focuses upon the second requirement found in *Hovee v. State*, 596 P.2d 1127 (Wyo.1979). He contends he was inhibited in preparation of his defense because of vagueness as to dates and the denial of his motion for a bill of particulars.

 The Amended Information described details of the incidents charged, articulating the names of the victims and stating the incidents occurred at Vernier's home when the victims were living with him and his wife. Count I describes his getting into bed with his nine-year old granddaughter and touching her vaginal area. Count II describes his removing the clothes of the victim, rubbing her breasts, and penetrating her vaginal area with his finger. Count III describes his exposing his penis to the victim while she was using the toilet and forcing her to touch it. These details were provided in Exhibit "A" attached to both the original Information and the Amended Information. The victims said these events occurred repeatedly and often. We are satisfied adequate specificity was articulated according to our cases cited previously.

 Finally, Vernier asserts a violation of the third requirement of *Hovee*. He argues the absence of specificity with respect to dates could expose him to a future prosecution for the same offense in violation of WYO. CONST. art. 1, § 11, providing "nor shall any person be twice put in jeopardy for the same offense." With respect to such a contention, we said in *Stewart*, 724 P.2d at 442:

"[An information is sufficient if] the nature of the offense, the place where it is

alleged offenses were committed, the period of time covered thereby, as well as the specific statutes which it was claimed appellant violated, are specifically set out. * * *" *Butler v. United States*, 197 F.2d 561, 562 (10th Cir.1952).

And,

" * * * [w]here the time is not an essential element of the offense, it is sufficient to charge facts which show that the offense was committed. * * *" Id., at 562.

In the Amended Information, Vernier was advised of the nature of the offenses; the specific statutes violated; the location of the events in his home at Ranchester while the victims were living with him; and the time periods. We are satisfied the Amended Information articulates adequate information to bar future prosecutions for the same offenses. If, in the unlikely event a subsequent prosecution were initiated, the burden would be on the State to establish a crime different from those to which Vernier entered his pleas.

In addition, we think Vernier's argument is conjectural. There is no contention he has been charged a second time for the same offenses nor is there any contention such charges have been suggested. The statute and our cases do not require the allegation of specific dates for charges alleging sexual abuse of children. The facts are sufficient to demonstrate the commission of the offenses. We find no merit in this argument by Vernier and conclude the Amended Information provided him notice of the charges against him and allowed him to prepare a defense and protect himself from possible future prosecutions.

We refuse to adopt a judicial statute of limitation for criminal offenses. We hold the ten-year, pre-accusation delay did not infringe upon Vernier's right to due process. We hold there was no showing of substantial prejudice to his right to a fair trial or a demonstration that the delay was an intentional device to gain a tactical advantage. The Information sufficiently alleged the ele-

ments of the offenses, informed the defendant of the charges against which he should defend, and permitted him to plead an acquittal or conviction as a bar to future prosecutions.

The Judgment and Sentence of the district court is affirmed.