Joseph Dean COOK, Sr., Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 98–332.

Supreme Court of Wyoming.

June 5, 2000.

Representing Appellant: Sylvia Lee Hackl, Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Assistant Public Defender. Argument by Mr. Roden.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; Cassiday A. Murphy, Student Intern; and John Vinich, Student Intern. Argument by Ms. Murphy and Mr. Vinich.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

Joseph Dean Cook, Sr. (Cook) appeals his convictions on three counts of taking immodest, immoral and indecent liberties with a child, in violation of Wyo. Stat. Ann. § 14–3–105(a) (Michie Cum.Supp.1996).[1] In his initial issue, Cook contends the district court erred when it allowed three prosecution witnesses to vouch for the credibility of the victim. He also argues that the court improperly admitted evidence of prior consistent statements by the victim and abused its discretion by failing to impose sanctions for an alleged violation of a sequestration order. Finally, Cook claims he was denied effective assistance of counsel. Finding all of Cook's contentions unavailing, we affirm.

### ISSUES

Cook presents this statement of the issues:

I. Did the court deprive Appellant of his constitutional right to a trial by jury by permitting prosecution experts to testify on the credibility of the complainant?

II. Did the court deprive Appellant of his due process right to a fair trial by permitting the prosecution to offer prior consistent statements of the complainant to rebut claims that she fabricated her accusations even though the prior statements were made well after the complainant already possessed the motives to fabricate?

III. Did the court deprive Appellant of his due process right to a fair trial by permitting a key prosecution witness who had been sequestered to testify notwithstanding her having learned the complainant's testimony?

IV. Was Appellant denied effective assistance of counsel because his trial lawyer neglected to ascertain the date of the alleged offense before trial, failed to introduce into evidence a prior inconsistent statement of the complainant, failed to object to instructions that deprived appellant of a fair trial, and neglected to object to unconstitutionally burden diminishing arguments of the prosecution?

The State presents the issues as:

I. Did witnesses for the State improperly vouch for the credibility of the child victim?

II. Did testimony by witnesses for the State as to prior consistent statements by the child victim constitute plain error?

III. Did the district court abuse its discretion when it did not impose sanctions for an alleged violation of its order sequestering witnesses?

---

1. Wyo. Stat. Ann. § 14–3–105(a) (Michie Cum. Supp.1996) reads:

(a) Any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony. Except as provided by subsection (b) of this section, a person convicted under this section shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.

IV. Was Appellant denied the effective assistance of trial counsel?

## FACTS

The victim is Cook's stepdaughter, AE. Cook, AE, AE's mother (TC), Cook's son from a prior marriage, and two sons of Cook and TC lived together in Weston County. A teenaged friend of Cook's son also lived with them intermittently. In November 1996, AE told TC that Cook had been sexually molesting her. TC took AE to the County Law Enforcement Center, where Deputy Stensaas interviewed her. AE told him about several occasions on which Cook molested her. A few days later, TC took AE to a physician for a medical examination, including a gynecological examination. TC also took AE to a psychologist who provided counseling and concluded that AE had been sexually abused.

On January 9, 1997, the county attorney filed an information charging Cook with three counts of taking immodest, immoral or indecent liberties with a child. Cook's trial commenced on May 11, 1998. The jury returned guilty verdicts on all three counts. Cook filed his appeal to this court.

## DISCUSSION

### Vouching for Victim's Credibility

■ In his initial issue, Cook argues that the trial court erred by allowing three expert witnesses to vouch for the victim's credibility. He alleges that Deputy Stensaas, AE's physician, and AE's psychologist each testified that they had assessed AE's credibility and determined that she was truthful in her accusations. Defense counsel did not object to the testimony of the physician and the psychologist, and objected to the deputy's testimony on unrelated grounds. Our review is, therefore, limited to a search for plain error. *Hodgins v. State*, 962 P.2d 153, 156 (Wyo. 1998).

A three-part test has been established for determining whether an error may achieve the status of plain error. First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and un-equivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced. *Id.* (citing *Bradley v. State*, 635 P.2d 1161, 1164 (Wyo.1981)).

The first prong of our plain error test is satisfied because the challenged testimony of all three witnesses is preserved in the trial transcript included in the record before us. Cook's brief articulates and argues a different standard of review, but we may discern from it that he believes the challenged testimony was admitted in violation of our pronouncement that an expert witness may not vouch for the truthfulness of another witness's testimony. *Lessard v. State*, 719 P.2d 227, 233 (Wyo.1986). If substantiated, that violation would satisfy the second prong of our test. We will examine the contested testimony of each expert witness separately.

■ Deputy Stensaas testified that when conducting an investigation, he observes the demeanor of individuals to evaluate their credibility. The deputy went on to relate the details of AE's allegations against Cook. In closing arguments, the prosecutor referred to Deputy Stensaas' training and experience in a way that Cook contends was meant to bolster AE's testimony. We have closely examined the deputy's testimony and found no instances where he offered an opinion or conclusion about whether AE had been molested or whether her story was credible. The deputy merely explained some of the procedures for interviewing alleged victims of sexual abuse.

■ AE's physician testified that when interviewing alleged victims of sexual abuse, he observes their behavior to "develop an impression from the story that the patient tells us." He also repeated AE's accusations against Cook. Cook argues that the doctor vouched for AE's credibility during the following exchange on direct examination:

Q: In your training, practice and experience, how many children victims would you estimate you've examined?

A: I think that I've examined three.

Q: Is [AE] one of those three?

A: Yes.

Taken out of context, the doctor's testimony might support an argument that he conveyed to the jury a conclusion that AE was indeed a victim of sexual abuse. Viewed in its proper context, however, the testimony belies that theory. Both before and after the exchange reported above, the prosecutor spoke exclusively of "alleged victims of sexual abuse" or "victims of alleged sexual abuse." After reviewing all of the doctor's testimony, we are convinced that he was speaking of alleged victims of abuse, and included AE in that category.

■ AE's psychologist testified that AE "didn't seem programmed or rehearsed in any way." She further testified "It is my opinion and my diagnosis that [AE] is a victim of sexual abuse." On cross-examination, the psychologist testified that her diagnosis depended on AE's statements to her, and that absent those statements, she could not have concluded that AE had been sexually abused. Cook argues that by admitting that she relied on AE's statements in reaching a diagnosis, the psychologist vouched for the truthfulness of those statements.

Because the psychologist did offer an opinion that AE had been a victim of abuse, we must look at her testimony to determine whether it 1) assisted the jury in understanding some aspect of the victim's behavior; and 2) did not include any comment on the victim's truthfulness or credibility. *Zabel v. State*, 765 P.2d 357, 361 (Wyo.1988). In its full context, the first part of the psychologist's testimony that Cook challenges is:

> She presented pretty—what we call a flat affect, which means that if these kids aren't acting out angry a lot, they're pretty calm. They're kind of without emotion when they talk about it. Because if—you know, if they don't fall apart, they've found a way to kind of live with it and go to school and not cry every day and keep a lid on things so that they—they're emotionless. They're not mad. They're not sad. They're not angry. They're just kind of telling me the facts.
>
> She didn't seem programmed or rehearsed in any way that—with programming it's kind of like you plug in the tape and they tell the whole thing, the whole story from beginning to end. This is more, you know, I asked her a question. She answered. I asked her a question. She answers. It's not a lot of, you know, and I say this and I say this and I say this and I say this, although she's certainly told her story enough to quite a few people by now.

Here, the psychologist differentiated between behavior characteristic of a child who had been abused, and that characteristic of a child who was fabricating, and reported that AE's behavior was consistent with the former. We have held testimony explaining that an alleged victim's behavior is typical of a particular type or class of victim is admissible to explain the behavior and is not an impermissible comment on the victim's credibility. *Griego v. State*, 761 P.2d 973, 979 (Wyo.1988); *Scadden v. State*, 732 P.2d 1036, 1046–47 (Wyo.1987). The testimony quoted above, therefore, was properly admitted.

The second part of the psychologist's testimony of which Cook complains was also free from plain error. Cook argues that by admitting reliance on AE's statements, the psychologist vouched for their truthfulness. We disagree. The psychologist simply acknowledged that her diagnosis was based on all of the information available to her, much of which came directly from AE. Essentially, she admitted that the reliability of her diagnosis rested on AE's truthfulness. That left the issue of credibility entirely with the jury, where it belongs.

The challenged testimony transgressed no clear and unequivocal rule. Because Cook cannot satisfy the second prong of our plain error test, we hold that the court did not commit plain error in admitting it.

### Prior Consistent Statements

■ In his second issue, Cook scores the trial court for allowing TC and Deputy Stensaas to testify about prior consistent statements by AE after she had a reason to fabricate them. On cross-examination of AE, defense counsel challenged her testimony by alleging discrepancies between her testimony and her earlier statements to TC and Deputy

Stensaas; by implying that AE made up her allegations of abuse so she could go live with her grandmother; and by eliciting testimony that AE talked with TC and the prosecutor about her expected testimony. After AE testified, both TC and Deputy Stensaas testified about prior statements by AE that corroborated her testimony.

Because defense counsel did not object to the testimony at trial, we will apply our plain error standard of review which we explained above. The first element of that test is again satisfied because the testimony complained of is clearly preserved in the record. To satisfy the second prong, Cook asserts that the testimony violated W.R.E. 801(d)(1)(B), which provides:

> (d) *Statements which are not hearsay.*—A statement is not hearsay if:
>
> (1) Prior Statement by Witness.—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive....

■ We have said that Rule 801(d)(1)(B) "had two express conditions for the admissibility of prior consistent statements: 1) The prior statement must be 'consistent with his testimony'; and 2) there must be an 'express or implied charge ... of recent fabrication or improper influence or motive.'" *Makinen v. State,* 737 P.2d 345, 349 (Wyo.1987). We expressly stated in *Makinen* that the rule was not limited to statements made before the advent of an allegedly improper motive, as Cook suggests here. *Id.* We recently affirmed that position in *Dike v. State,* 990 P.2d 1012, 1024 (Wyo.1999).

■ Cook contends that our holding in *Makinen* has been superseded by the United States Supreme Court's opinion in *Tome v. United States,* 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). In *Tome,* the Supreme Court held that F.R.E. 801(d)(1)(B), after which our rule is patterned, allows only those prior consistent statements made prior to the alleged fabrication or improper influence or motive. *Tome,* 513 U.S. at 159-60,

115 S.Ct. at 702, 130 L.Ed.2d at 583–84. We acknowledge that federal court interpretations of federal rules are highly persuasive in our interpretations of analogous Wyoming rules. *Kimbley v. City of Green River,* 642 P.2d 443, 445 n. 3 (Wyo.1982). However, the decision in *Tome* was not based on a constitutional issue and is, therefore, not binding upon this court, which is the final authority on this state's court rules.

This court determined in *Dike* that postmotive consistent statements are admissible for the purpose of evaluating the credibility of the declarant who testifies at trial. We further held that the defendant is entitled to a limiting instruction to that effect, if he or she so requests. *Id.* at 1024. We hold, therefore, that the testimony in question did not violate W.R.E. 801(d)(1)(B). Without a rule violation, Cook cannot satisfy the second prong of our test for plain error, and his claim on this issue must fail.

### Violation of Sequestration Order

Cook next argues that the trial court erred in allowing TC to testify after she allegedly learned the content of AE's testimony, in violation of the court's sequestration order. Sequestration is authorized by W.R.E. 615, which provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may enter the order on its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

■ Violations of sequestration orders, and the sanctions therefor, are left to the sound discretion of the trial court, and we will reverse only if that discretion is abused. *Madrid v. State,* 910 P.2d 1340, 1345 (Wyo. 1996). A search for an abuse of discretion calls upon this court "to determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was

arbitrary or capricious." *Vaughn v. State,* 962 P.2d 149, 152 (Wyo.1998).

■ Here, the court entered a sequestration order at defense counsel's request, prior to the attorneys' opening statements. Cook contends the order was violated by a friend of TC who was in the courtroom while AE testified. The friend reported that she spoke with TC twice during breaks outside the court building and told TC "that [AE] did a very good job on the stand and that she said what she needed to say here." The friend acknowledged that she was aware of the sequestration order. After hearing the friend's testimony about her conversations with TC, the trial court said, "Okay. Well, there may have been a technical violation of the order, but it doesn't seem to me the spirit of the order was violated in any way." Cook argues that the conversations between TC and her friend violated the sequestration order and allowed TC to conform her testimony to AE's. Therefore, he reasons, the trial court should not have allowed TC to testify.

The trial court directed that witnesses would be excluded from the courtroom and were forbidden to discuss their testimony with anyone except the attorneys until the trial ended. The State contends that there was no violation of the sequestration order because TC was not in the courtroom while AE testified and did not discuss her own testimony with her friend. While that argument adheres to the letter of the court's order, we find it unsatisfying. Had TC's friend reported the content of AE's testimony, the purpose of sequestration would be defeated. In such a case, the State would be hard pressed to convince us that no misconduct had occurred.

Assuming, *arguendo,* that the conversations between TC and her friend did violate the sequestration order, the State argues that the trial court did not abuse its discretion by refusing to impose sanctions. We agree. The scope of the alleged transgression was very limited, and the court could have reasonably concluded that it did not present a threat that TC would conform her testimony to AE's. In addition, Cook did not make a timely request for sanctions, so he is in a poor position to criticize the court for not imposing any. We hold the trial court did not abuse its discretion in allowing TC to testify despite the alleged violation of the sequestration order.

## Ineffective Assistance of Counsel

■ In his final assignment of error, Cook contends he was denied effective assistance of counsel. Our standard of review for reviewing claims of ineffective assistance of counsel is well established:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Mapp v. State,* 953 P.2d 140, 143 (Wyo.1998) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). In addition, we invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment. *Jackson v. State,* 902 P.2d 1292, 1295 (Wyo.1995).

Cook points to five instances in which he claims his trial counsel was ineffective. We will examine each instance separately.

### Bill of particulars

First, Cook claims his trial counsel failed to ascertain the precise date of the offense charged in Count I of the criminal information. That count alleged that Cook committed the offense "on an unknown date in approximately March, 1996." He contends that had he known the date of the offense, he might have been able to produce an alibi, and if the State had been unable to specify a

date, the count could have been dismissed as insufficiently definite to permit him to prepare a defense. He therefore concludes that his counsel was remiss in failing to move for a bill of particulars.

■ Cook's argument is singularly unpersuasive in light of our decision in *Vernier v. State*, 909 P.2d 1344, 1351 (Wyo.1996). In *Vernier*, the defendant was charged with two counts of indecent liberties and one count of second degree sexual assault with a child. One count gave a sixty-day time period within which the offense was alleged to have occurred, and the two other counts provided ninety-day periods. We said there that in cases of sexual abuse of a child "the allegation of a general time period in lieu of a specific date is sufficient to give the defendant notice and allow him to adequately prepare a defense." *Id.* The motions Cook suggests on appeal would have been unavailing, and we have held that defense counsel is not ineffective for refusing to pursue motions that cannot succeed. *Beadles v. State*, 984 P.2d 1083, 1086 (Wyo.1999); *Bloomquist v. State*, 914 P.2d 812, 821 (Wyo.1996).

### Victim's statement

■ Cook next finds fault with his counsel's failure to introduce into evidence the signed statement AE gave to Deputy Stensaas. He alleges that the statement deviates from AE's trial testimony and would, therefore, have been helpful to show inconsistencies in her story. The State responds that AE's written statement was not inconsistent with her testimony, and keeping it out of the jury's hands was a legitimate trial tactic on the part of Cook's attorney. The State further points out that we cannot fully evaluate Cook's claim because he neglected to have the statement included in the record on appeal.

At trial, AE testified that the alleged offense of March 1996 occurred in her bedroom. On cross-examination, defense counsel attempted to impeach AE using her written statement, in which she stated that the first time Cook molested her was in the bedroom Cook and TC shared. AE explained that the first episode described in her written statement was not the March

1996 episode about which she had testified. We surmise that defense counsel, having learned that the statement was not useful to impeach AE's testimony, elected not to move for its admission. We will not fault counsel for not providing the jury with the victim's handwritten statement accusing his client.

### Statement by the court

■ In his third assertion of ineffective assistance, Cook argues that his trial counsel failed to object to a statement by the court, which he claims instructed the jury to decide the case based on emotion rather than the evidence. The statement occurred immediately prior to voir dire when the court shared two anecdotes with the venire and then said:

> Now, I tell you those stories for a purpose. One of them is they're mildly amusing, but the other one is I want you to understand that while what we're doing here is serious business, that doesn't mean that we want you to be automatons or lose your since [sic] of humanity. The humanity that the jurors bring to the process is one of the things that we look for precisely, so we want you to laugh at the things funny and cry at the things sad and express that full range of human emotions.

Cook styles that comment as a jury instruction and claims that it conflicts with the court's later instruction to the jury that they must not "be governed by sympathy, prejudice or public opinion." He contends that when two inconsistent instructions are given and one of them is improper, we must order a new trial. *State v. Eldredge*, 45 Wyo. 488, 21 P.2d 545, 547 (Wyo.1933). Cook concludes that his defense counsel was remiss in failing to object to the conflicting instructions and, therefore, rendered ineffective assistance.

The State counters by arguing that the court's statement was not a jury instruction, nor did it invite the jury to decide the case based on emotion rather than evidence, and defense counsel was justified in letting it pass without objection. We agree. In context, the court's statement clearly admonished the venire to be candid and genuine in their responses to voir dire inquiries. The

court did not err by so admonishing the panel, nor did defense counsel render ineffective assistance by not objecting.

### Jury Instruction No. 2

██ Cook next scores his trial counsel for not objecting to a portion of Jury Instruction No. 2 which he now contends "suggested that if the jury did not reach a verdict it was likely either unfair or unreasonable." The challenged language reads: "If every juror is fair and reasonable, a jury can almost always agree on a verdict." To place that sentence in its proper context we present the entire instruction:

### INSTRUCTION NO. 2

I will now instruct you on the law you must apply. It is your duty to follow the law.

The law forbids you to be governed by sympathy, prejudice or public opinion. You must consider the evidence, apply the law as instructed, and reach a just verdict regardless of the consequences.

Your attitude as you begin deliberation is important. It is not useful for any juror to announce a firm decision upon entering the jury room. The verdict, which expresses your collective judgment, is important, not the individual opinions you may have as you begin. You should decide only after free and full discussion of the evidence and upon careful and thoughtful deliberation.

During deliberation each of you should state your position and explain your reasoning. You should consider the position and reasoning offered by others. In the course of discussions do not hesitate to re-examine your views; *you do not have to change your mind because others disagree*, but you should keep an open mind.

*When it comes time to vote, do so according to your best judgment*, applying the law as instructed to the facts. Always keep in mind that you are not partisans or advocates, but jurors. If every juror is fair and reasonable, a jury can almost always agree on a verdict.

You are the exclusive arbiters of the facts and of the worth of the evidence. In considering the evidence presented you may draw reasonable inferences and conclusions from it based upon your general knowledge, observations and experience in the affairs of life. In deciding what testimony you believe, you should take into consideration all the circumstances of the case and the factors I discussed in my opening instruction.

I have not intentionally emphasized any part of these instructions, even though I may have stated some of them in varying ways. *You are not to single out a certain instruction or part of an instruction and ignore the rest.* You must consider all the instructions as a whole and regard each in the light of all the others. The order in which the instructions are given has no significance.

(Emphasis added.) The first emphasized phrase instructed the jurors that they were not required to agree with each other or surrender honestly held opinions. The second emphasized phrase instructed each juror to vote according to his or her best judgment. The final emphasized phrase, as applied to the issue here, forbids jurors from fixing on the phrase to which Cook objects and ignoring the rest of the instruction. Viewed within the context of the entire instruction, the phrase Cook points to is a permissible comment based on the court's observation of past juries and casts no aspersions on a jury that might be unable to reach a verdict. Because the instruction was proper, defense counsel did not render ineffective assistance by failing to object to it.

### Closing arguments

██ In his final claim of ineffective assistance, Cook contends his trial counsel should have objected to the following two portions of the State's closing argument:

I submit to you, ladies and gentlemen of the jury, that in any household, whether it's the Cook household, my household, or your own household, people come and go all of the time. And it's certainly not unbelievable that [AE] and Joseph Cook at

some point in time would not have been alone in that house together.

and

Now, [defense counsel] asked [the psychologist] a lot of questions, such as isn't it possible that your conclusion could be affected by the way she had been interviewed by someone else. And [the psychologist] said, well, sure, that's possible.

He asked other questions along that same vein, which I can't specifically recall, but you will recall that there was several questions to [the psychologist] that, Would it be possible if? Wouldn't it be possible if? And each one she answered yes, it would be possible.

Well, it's possible the sun may not come up tomorrow. It's not very probable, but it's possible. And so when you evaluate [the psychologist's] testimony, keep in mind that at the time she interviewed [AE] and formed the conclusion that she was a sexually abused child, she was using all of her tools, all of her expertise, all of her training as a licensed psychologist in the state of Wyoming to come up with her conclusion, and her conclusion was [AE] was sexually abused.

Cook argues that both of the above excerpts suggest a burden of proof lower than proof beyond a reasonable doubt.

In the first excerpt, the prosecutor was addressing the testimony of Cook's oldest son and the son's friend. Both testified that they had never seen Cook and AE alone together or coming out of a bedroom together. In light of that testimony, the State was justified in pointing out that a crime is no less likely to have occurred simply because the defense can produce two witnesses who did not see it happen. The second excerpt was a similarly appropriate comment on the evidence. The prosecutor's argument was directed at showing that the psychologist's diagnosis of abuse was reliable, despite defense counsel's attempt on cross-examination to show that it was flawed. The prosecutor made no reference to the burden of proof on the ultimate question of Cook's guilt or innocence. He merely was arguing that the psychologist's testimony was reliable.

Because the State's closing argument consisted of permissible comments on the evidence presented, defense counsel did not render ineffective assistance in electing not to object.

We hold that all of Cook's claims on appeal are without merit, and we affirm his convictions in all respects.